BMT COMMODITY CORP.,

and

Delca Distributors, Inc., Plaintiffs,

v.

The UNITED STATES, Defendants,

and

Codfish Corp., Defendant–Intervenor.

No. 85–7–00915.

United States Court of International Trade.

Nov. 19, 1987.

Freeman, Wasserman & Schneider (Jack G. Wasserman and Jerry P. Wiskin), New York City, for plaintiffs.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel and Judith M. Czako, U.S. International Trade Com'n, Washington, D.C., for defendants.

Patton, Boggs & Blow (Bart S. Fisher, Michael D. Esch, and Daniel E. Waltz), Washington, D.C., for defendant-intervenor.

## OPINION

RESTANI, Judge.

Plaintiffs, BMT Commodity Corp. and Delca Distributors, Inc., pursuant to Rule 59 of the Rules of this court, move for a rehearing of this court's opinion and judgment in this action. *BMT Commodity Corp. v. United States*, 11 CIT ——, 667 F.Supp. 880 (1987). That opinion and judgment denied plaintiffs' motion for judgment based upon the administrative record challenging the International Trade Commission's (Commission) final affirmative dumping determination in *Certain Dried Salted Codfish from Canada*, USITC Pub. No. 1711, Inv. No. 731-TA-199 (July 1985) (ITC Determination).

In their motion for rehearing, plaintiffs argue that: (1) the court misconstrued the opinions of the Commission regarding "viability at inception" and "viability in the future," and (2) the court misinterpreted or overlooked evidence of record. For the following reasons, plaintiffs' motion for rehearing is denied in all respects.

A motion for rehearing is addressed to the sound discretion of the court. *United States v. Gold Mountain Coffee, Ltd., et al.*, 8 CIT 336, 601 F.Supp. 212 (1984). The exceptional circumstances for granting a rehearing were clearly enunciated in *W.J. Byrnes & Co. v. United States*, 68 Cust.Ct. 358, C.R.D. 72-5 (1972) as follows:

> A rehearing may be proper when there has been some error or irregularity in the trial, a serious evidentiary flaw, a discovery of important new evidence which was not available, even to the diligent party, at the time of trial, or an occurrence at trial in the nature of an accident or unpredictable surprise or unavoidable mistake which severely impaired a party's ability to adequately present its case. In short, a rehearing is a method of rectifying a significant flaw in the conduct of the original proceeding.

68 Cust.Ct. at 358 (footnote omitted).

The purpose of a rehearing is not to retry a case. *Brookside Veneers, Ltd. v. United States*, 11 CIT ——, 661 F.Supp. 620 (1987), *appeal docketed*, No. 87-1379 (Fed.Cir. June 4, 1987).

With regard to their first argument, plaintiffs assert specifically that the court wrongly inferred that the Commission majority explored Codfish Corporation's viability at inception. In addition, plaintiffs allege that the court incorrectly concluded that Codfish Corporation filed a petition under the bankruptcy laws in late 1984 and that this error "colors the relevant time frames which all parties (and the Court) recognize as critical and bears directly on the sufficiency of the evidence relied on by the Commission's majority." Plaintiffs' Memorandum at 4–5.

These grounds possess none of the criteria upon which a rehearing may be grant-

ed. Plaintiffs argued at length in their motion for judgment on the administrative record that the Commission failed to focus its material retardation analysis on Codfish Corporation's "viability at inception." They are not now entitled to a rehearing simply because the court rejected those arguments. This court has consistently denied motions for rehearing premised solely on the moving party's dissatisfaction with the trial court's decision. *E.g.*, *V.G. Nahrgang Co. v. United States*, 6 CIT 210 (1983); *Industrial Fasteners Group v. United States*, 3 CIT 104 (1982); *Gold Mountain Coffee*, 8 CIT 336, 601 F.Supp. 212.

There appears to be some confusion between the date of bankruptcy and the date operations of Codfish Corporation first ceased. In fact, the bankruptcy petition appears not to have been filed until November, 1985, several months after the Commission's final determination of July, 1985 and approximately a year after Codfish Corporation first discontinued its operations. Any error as to the date of official filing is not, however, a "significant flaw" which gives rise to the right for rehearing. In fact, such an error would in no way affect the substance of the court's decision. Because this court concluded, and plaintiffs agree, that the appropriate focus of analysis of viability of the domestic industry in this material retardation case was at its inception, the precise date at which the bankruptcy petition was filed is inconsequential. Furthermore, to the extent the court discussed viability other than based on analysis of initial feasibility, it was concerned with plans for future operations, not change in legal status under the bankruptcy laws.

Plaintiffs' second argument in support of their motion is that the court misinterpreted or overlooked evidence of record. Specifically, they claim that the court erroneously concluded that plaintiffs did not contest the raw data contained in Codfish Corporation's initial feasibility study; and that the court misconstrued the record in determining that there was substantial evidence to establish that Codfish Corporation had sufficient working capital and that the mar-

ket for dried salted codfish was not declining.

Plaintiffs assert now, as they did in their original brief, that the two documents on which the Commission relied, the initial feasibility study prepared on behalf of Codfish Corporation and the break-even analysis prepared by the Commission staff, are "a mass of obviously incomplete data, demonstrably faulty assumptions and half-baked accounting techniques." Plaintiffs' Memorandum at 12. In support of this general condemnation, plaintiffs claim that transportation costs utilized in the initial feasibility study were flawed and that the study's reliance on the procurement of raw materials from traditional source countries was misplaced. Plaintiffs' Memorandum at 13.

In making its determination, the Commission concluded that any disadvantages Codfish Corporation may have had vis-a-vis Canadian producers in the areas of transportation costs or in procuring raw materials were offset by advantages gained in reduced labor costs and easy access to local markets. ITC Determination at 7. The court found this conclusion to be supported by substantial evidence in the record. 667 F.Supp. at 885–86.

Plaintiffs' present assertion that "the raw data in the initial feasibility study regarding Codfish Corporation's transportation costs was specifically attacked and unquestionably demonstrated to be seriously flawed" is simply incorrect. Plaintiffs' Memorandum at 13. The only attack on transportation costs by plaintiffs prior to the motion for rehearing was leveled at raw data contained in Codfish Corporation's May, 1985 study, not the initial feasibility study, and relates to the cost of transporting raw material from "new sources." Plaintiffs' Main Brief supporting their Rule 56.1 motion at 30. The accuracy of this data, which is relevant only to the issue of Codfish Corporation's viability after it was already affected by LTFV imports, affords plaintiffs no basis for a rehearing. Likewise, plaintiffs' preference for conclusions contained in the Citicorp study regarding the cost effectiveness

of Codfish Corporation procuring raw materials from traditional source countries over those contained in the initial feasibility study affords plaintiffs no basis for a rehearing. Plaintiffs, once again, are simply repeating arguments previously made in this case which have been rejected by the court.

Plaintiffs state two objections to the court's treatment of the working capital issue: first, the court should not have faulted plaintiffs for failing to present specific evidence regarding Codfish Corporation's capital needs because the Commission denied plaintiffs' request for disclosure of Codfish Corporation's initial feasibility study; and second, the court's conclusion that Codfish Corporation's working capital was adequate was based on unsubstantiated statements of counsel which demonstrates an absence in the record of substantial evidence which would support this factual determination by the court. Plaintiffs' Memorandum at 14–17.

While access to Codfish Corporation's feasibility study might have helped plaintiffs prepare their argument, given the availability of other sources of relevant information, including the opportunity to question Codfish Corporation's president Paulo da Cunha at the May 20, 1985 ITC hearing, the court is not convinced that the Commission's refusal to disclose the feasibility study irreparably hindered plaintiffs' presentation. In any case, disputes regarding access to information at the administrative level should be resolved during the administrative proceeding. Substantial evidence exists in the record to support the Commission's determination and the determination will not be overturned merely because, under other circumstances, plaintiffs might have presented more evidence.

Plaintiffs argue that the court's opinion on working capital cites only statements of counsel in support of this conclusion and not actual evidence in the record. Although counsels' statements are cited, this does not signify that evidence of record does not exist. The court had before it the entire record compiled before the Commission, including the initial feasibility study, when it evaluated plaintiffs' arguments and the Commission's determination. *E.g.*, ITC Staff Report at A–31 to A–38; Codfish Corporation's Initial Market Feasibility Study, *reprinted in* ITC Staff Report A–101, A–109 (Appendix C). Based upon this evaluation of the record, the court found that substantial evidence existed to support the conclusion that Codfish Corporation did not lack working capital with which to purchase inventory. If plaintiffs wish to take issue with this evaluation, they may not do so now before this court. "An allegedly incorrect evaluation of evidence by a trial court is not a proper ground for rehearing but for appeal." *Eiseman–Ludmar Co. v. United States*, 2 CIT 109 (1981). Although this matter did not come before the court for *de novo* hearing, the proposition remains true here as well.

Plaintiffs' final argument, that substantial evidence does not exist to support the conclusion that the demand for cod was not declining, must also be dismissed. Plaintiffs cite a statement by the Puerto Rico Chamber of Commerce that demand in Puerto Rico for dried salted fish had declined. In support of the contrary conclusion, the Commission relied upon data that the sales volume of cod was stable at relatively high price levels. Plaintiffs contend that this data is inaccurate and beyond the scope of investigation because the data was not compiled at the time of Codfish Corporation's inception. First, this argument takes issue with the court's evaluation of evidence and provides plaintiffs with no basis for a rehearing. Second, this argument is not compelling. The pricing data relied upon by the Commission appears in the appendix to the determination. The fact that the data was compiled in 1985 should not obviate its probative value. In verifying the relevance of portions of the Citicorp Study, the court recognized that following the progress of an industry could reveal important information about initial viability, (provided LTFV effects were taken into consideration). Consumer demand is clearly a factor that may be better understood by observing fluctuations over time. Thus, there does not seem to be any inconsistency in the court's analysis.

In summary, plaintiffs have advanced no argument that the court did not consider in its original decision and have presented no acceptable grounds for granting a rehearing.

Accordingly, plaintiffs' motion for a rehearing, pursuant to Rule 59, is denied and the original decision must be adhered to.