The **ASOCIACION COLOMBIANA de EXPORTADORES de FLORES, et al., Plaintiffs,**

v.

The **UNITED STATES, et al., Defendants.**

**Court No. 87–04–00623.**

United States Court of International Trade.

Dec. 27, 1988.

Heron, Burchette, Ruckert & Rothwell (Thomas A. Rothwell, Jr., James M. Lyons and William E. Donnelly), for Asociacion Colombiana de Exportadores de Flores and American Flower Corp. (Joseph A. Vicario, Jr. and Alfred G. Scholle), for Asociacion Colombiana de Exportadores de Flores.

Stewart & Stewart (Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and Jimmie V. Reyna), for Floral Trade Council of Davis, Cal.

Lyn M. Schlitt, Gen. Counsel, James A. Toupin, Asst. Gen. Counsel and (Judith M. Czako), U.S. Intern. Trade Com'n, for defendant U.S.

Kaplan, Russin & Vecchi (Kathleen F. Patterson and Dennis James, Jr.), for Government of Israel and Agrexco Agricultural Export Co.

Gustav Springer, for Bedrijfschap Voor de Groothandel, etc. and Vereniging Van Bloemenveiling, etc.

Prather, Seeger, Doolittle & Farmer (Edwin H. Seeger), for Flores Esmeralda, S.R. L.

Duncan, Allen and Talmage (John P. Williams and Leslie A. Glick), for Government of Kenya.

## OPINION

RESTANI, Judge:

This case is before the court following the International Trade Commission's (ITC) remand determination in *Certain Fresh Cut Flowers from Canada, Chile, Colombia, Costa Rica, Ecuador, Israel, Kenya,*

*Mexico, The Netherlands, and Peru,* Inv. Nos. 303–TA–18, 701–TA–275 through 278 and 731–TA–327 through 333 (August 1988) (Remand Determination). At this point in the proceedings, the only live issues involve negative threat determinations concerning miniature carnations from various countries.[1] The background of this consolidated case, involving challenges to certain of ITC's affirmative and negative determinations in *Certain Fresh Cut Flowers from Canada, Chile, Colombia, Costa Rica, Ecuador, Israel and The Netherlands,* USITC Pub.1956, Inv. Nos. 701–TA–275 through 278 and 731–TA–327 through 331 (March 1987) (*Flowers I*) and in *Certain Fresh Cut Flowers from Peru, Kenya and Mexico,* USITC Pub.1968, Inv. Nos. 303–TA–18 and 731–TA–332, 333 (April 1987) (*Flowers II*), is set forth in *Asociacion Colombiana de Exportadores de Flores v. United States,* 12 CIT ——, 693 F.Supp. 1165 (1988) (*Asocolflores*). In that opinion, the court remanded this matter for reexamination of the ITC's multiple domestic industry finding, also known as the like product determination, as well as for reexamination of the question of whether certain data should be analyzed on a cumulative basis for purposes of assessing threat of injury by reason of imports of miniature carnations from various countries. Following remand, the parties abandoned their objections to the finding of seven domestic flower industries, on the part of three commissioners, and of a single domestic flower industry, on the part of two commissioners.[2]

Thus, the only objection to the remand determination, which addressed both like product and cumulation, is the objection of Floral Trade Council of Davis (FTC), petitioner before ITC and a plaintiff and defendant intervenor here, to ITC's failure to cumulate for threat analysis purposes. FTC adheres to its earlier asserted claim of lack of substantial evidence supporting certain negative determinations regarding miniature carnations. These objections will be addressed separately.

I. Cumulative Analysis of Certain Data Regarding Threat of Injury by Reason of Unfairly Traded Miniature Carnations

As the court found in its earlier opinion herein, cumulative analysis of the volume and price effects of unfairly traded imports from all countries subject to investigation is not mandatory for threat of injury determination purposes. *See Asocolflores* at 1171–1172. Nonetheless, cumulative analysis may be applied in appropriate threat of injury investigations. It is error to fail to cumulate solely because of a general conclusion that any cumulation for threat analysis purposes is speculative. Such a view would, in effect, rule out cumulative analysis for threat purposes in all cases. Therefore, as the court held in its earlier opinion, ITC should consider whether cumulation would be appropriate under the facts of the particular case at hand. Implicitly, the court also required ITC to state the reason for its conclusion.

FTC states that on remand ITC did not follow the court's ruling, but rather applied a blanket rule under the guise of exercising discretion, and further that ITC applied an improper threshold for cumulation in the

---

1. Petitions were filed covering, *inter alia,* miniature carnations from Canada, The Netherlands, Kenya, Costa Rica, Ecuador, Israel, Peru, and Colombia. The entire commission rendered the equivalent of a negative determination with respect to miniature carnations from Canada, The Netherlands and Kenya. A majority of the Commission found threat of injury by reason of miniature carnations from Colombia. A different majority found no threat of injury by reason of such flowers from Costa Rica, Ecuador, Israel and Peru.

2. ITC apparently misunderstood the court's opinion regarding lack of record support for a

finding of a single domestic flower industry. The parties, however, have chosen to accept the split decision of ITC on this issue. Therefore, the court sees no reason to explain its original remand order on this issue or to further remand this matter regarding the like product issue. The court considers this issue settled as among the parties. The court also notes the non-participation of one commissioner in the remand proceeding. As indicated previously, remands are made to the ITC, not to the individual commissioners. Where possible all commissioners should participate in remand determinations. No challenge, however, is made on this basis.

nature of an improper "contributing effects" test. *Cf. Fundicao Tupy S.A. v. United States*, 12 CIT ——, 678 F.Supp. 898, 901 (1988); *USX Corp. v. United States*, 12 CIT ——, 682 F.Supp. 60, 73 (1988) (both finding a test for cumulation which required each country's imports to have a causal link to material injury improper for material injury analysis).

As to the two negative opinions based on the existence of one all cut flower industry,[3] one commissioner found the single cut flower industry in good condition and not sufficiently weakened to be threatened with injury from any source. The other commissioner found enough of a possibility of threat by reason of imports from Colombia and The Netherlands to discuss the issue, but found no likelihood for significant change as to imports from those countries. Thus, together or separately, such imports would pose no threat of material injury to the currently uninjured industry. It is clear from the opinion that this commissioner also found the U.S. industry in such a healthy condition, and the effect of imports from other countries so negligible, that threat of injury would not be found based on either a cumulative or a non-cumulative analysis. Thus, cumulation seems to be, for the most part, irrelevant for purposes of the single flower industry opinions. Although FTC apparently disagrees with this approach, FTC does not challenge it in this action. Thus, the focus here is on the determinations of the three commissioners who found separate flower industries, and particularly on the one opinion of the three which found no threat of injury with regard to miniature carnations from Ecuador, Israel, Costa Rica, and Peru.

■ First, as a preliminary matter, the remand determination appears to assert that relevant ITC decisions involving discretion need not be explained. Remand Determination at 16–17. The court believes that such a statement is misleading. Many choices of ITC involve "discretionary" considerations, but the choices generally must be explained so that the reviewing court may discern the path of reasoning which led to the final outcome.[4] As the ITC apparently recognizes, it is also unwise not to explain hotly contested issues, as this will often result in remands for further explanation. That the administrative agency may make varying decisions based on the facts of particular cases does not permit the agency to act arbitrarily. In order to ascertain whether action is arbitrary, or otherwise not in accordance with law, reasons for the choices made among various potentially acceptable alternatives usually need to be explained. *See Bowman Transportation v. Arkansas–Best Freight System*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 441–42, 42 L.Ed.2d 447 (1974) (agency must articulate a rational connection between the facts found and the choice made). Whether a particular issue needs to be specifically addressed in these types of cases does not rest on whether the issue involves discretionary considerations; it rests on factors such as the importance of the issue to the outcome of the case, whether it is a serious issue, whether it was a focal point of the parties' arguments, and, generally, whether the final result may be sufficiently reviewed without specific discussion of the issue.

■ Second, after making the statement that obviously caused the court some concern, ITC did explain its reasoning in

---

**3.** Threat of material injury was found by ITC only with respect to miniature carnations from Colombia.

**4.** In support of its apparent belief that it need not explain its reasons for not engaging in discretionary analysis, ITC cites *Hyundai Pipe Co. v. United States*, 11 CIT ——, 670 F.Supp. 357 (1987). Assuming *arguendo* that *Hyundai Pipe* stands for the proposition that ITC need not explain the type of choice made here in circumstances similar to these, the court does not concur with that view. *Hyundai*, however, might be read as standing for the proposition that the relevance of non-statutory factors for decision making vary from case to case and that all need not be discussed in every case. This is also in accord with the view expressed in cases dealing with statutory factors. *See, infra*, discussion of product shifting. The court finds the decision at hand is to be contrasted with the type of discretionary decision as to which there is no law to apply. Such decisions are essentially unreviewable. Such unreviewable decision-making is not at issue here.

sufficient detail to permit review. Addressing FTC's basic challenges, the court finds no attempt by ITC to apply a blanket rule against cumulation for threat determination purposes. Although such a prohibition was implied in the first determination, it is clearly not the approach taken on remand. The court also finds no application of an improper contributing effects test, that is, ITC did not find that imports from each country must be causally linked to threat of material injury on an individual basis before cumulative analysis may be undertaken.

The court views cumulative analysis for threat purposes as feasible in certain circumstances. For example, if imports are increasing at similar rates in the same markets and have relatively similar margins of underselling, it is likely that cumulation could be undertaken. This does not mean that each country's imports need threaten injury by themselves. Separately, none of them might threaten injury. Whether cumulative analysis is actually feasible in various circumstances is left to ITC to decide in other cases. Here, ITC found great disparity in the patterns of volume increases and decreases among imports from the various countries. The court does not read ITC's references to Colombian market share versus that of other countries as indicating application of an improper contributing effects test. Colombian exports were simply on a totally different plane from those of other countries in terms of market share, volume trends and otherwise. Finally, ITC notes that patterns of underselling, or lack thereof, varied greatly from one country to the next. Thus, price effects analysis on a cumulative basis would be difficult. The court has previously noted, as did ITC in its remand determination, the impossibility of cumulative analysis for purpose of certain statutory threat of injury indicators.[5]

■ FTC has not argued alternatively that the volume and price effects of im-

ports from certain countries, comprising part of the entire pool of unfairly traded imports, could be cumulatively assessed, rather FTC argues for cumulation of all unfairly traded imports based on the same factors which mandate cumulation for actual injury determinations. The court rejects this view for the reasons stated in its original opinion. Accordingly, the court finds reasonable, and based on substantial evidence of record, ITC's determination not to cumulatively analyze volume and price effects for threat of injury purposes in this case.

II. ITC's Determination of No Threat of Injury by Reason of Miniature Carnations from Costa Rica, Ecuador, Israel or Peru is Based on Substantial Evidence

As there is no challenge to the negative determinations which were based on one cut-flower industry, review focuses on the negative determination of the commissioner who analyzed miniature carnations as a separate industry. Each country's imports will be addressed separately, as they were by ITC.

A. *Costa Rica*

The relevant opinion regarding threat of injury by reason of miniature carnations from Costa Rica is found at pages 57–58 of the final determination in *Flowers I.* As to the Costa Rican imports, the commissioner noted the low market share held by Costa Rican miniature carnations. He also noted import prices were often above domestic prices and the downward trend of domestic prices versus fluctuating Costa Rican import prices. American Flower Corporation, a Costa Rican producer, noted the availability of other markets for Costa Rican imports.

FTC relies first on evidence of a surge in the market share held by Costa Rican imports and the fact that the commissioner drew opposite conclusions based on alleg-

---

**5.** The court notes that section 1330 of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1107 (1988) provides that ITC may cumulate where practicable in threat cases if the basic conditions for cumu-

lation for material injury investigations exist. This case is not governed by the 1988 Act, and the court does not reach the issue of whether the 1988 Act permits or requires cumulation in more, or fewer, circumstances than previously.

edly analogous information about Colombian imports.[6] Putting aside American Flower Corporation's challenge to the accuracy of United States Department of Agriculture information relied on by ITC as to Colombia, the commissioner made clear that his views on pricing and market share trend were made in the context of small absolute market share and volume. This certainly contrasts with the Colombian situation.

■ Second, FTC alleges that the commissioner failed to consider the statutory factor of the potential for product shifting. *See* 19 U.S.C. § 1677(7)(F)(i)(VIII) (Supp. IV 1986). Contrary to FTC's assertion, it is not always necessary to discuss every statutory injury or threat of injury factor. *See Gifford–Hill Cement Co. v. United States*, 9 CIT 357, 369–70, 615 F.Supp. 577, 587 (1985).[7] ITC, of course, must *consider* the statutory indicators of threat. 19 U.S.C. § 1677(7)(F)(i) (Supp. IV 1986); *Yuasa–General Battery Corp. v. United States*, 11 CIT ——, 661 F.Supp. 1214, 1222 (1987). There is no reason, however, to believe that the commissioner was blind to any evidence which might be relevant regarding product shifting, and did not consider this factor. Product shifting was discussed by the petitioner and by some of the commissioners, but the record does not indicate that product shifting should have been a determinative factor. Thus, it was not error to fail to mention this factor. For completeness sake, however, the court will discuss the evidence regarding this factor.

■ There are essentially two general assumptions which should be kept in mind regarding the potential for product shifting in this case. First, the existence of unfair trade orders may motivate product shifting for any industry. Second, as many agricultural products must be replanted periodically, product shifting is a possibility in many agricultural cases. These two general propositions do not by themselves mandate a conclusion that product shifting is likely. Why product shifting would be particularly attractive to the Costa Rican flower industry was not demonstrated. There is no information of record indicating Costa Rican imports could make a much larger miniature carnation market, so as to warrant abandonment of traditional production. Furthermore, one of the basic assumptions may not be applicable here. The pre-amended final dumping margin, which was before ITC, was less than one percent. *Certain Fresh Cut Flowers from Costa Rica*, 52 Fed.Reg. 6852 (Mar. 5, 1987) (Final Determination of Sales at Less Than Fair Value). Furthermore, the amended final determination resulted in no additional duties for other Costa Rican flowers. *Certain Fresh Cut Flowers from Costa Rica*, 52 Fed.Reg. 8493 (Mar. 18, 1987) (Amendment to Final Determination). While ITC may not have known of this result at the time of its determination, the court is, at least, concerned that a remand to consider this factor would be meaningless.

Accordingly, the court finds the commissioner's finding as to miniature carnations from Costa Rica supported by substantial evidence and in accordance with law.

### B. *Ecuador*

The relevant opinion regarding Ecuadorian imports of miniature carnations is found at pages 58–59 of *Flowers I.* As to miniature carnations from Ecuador, the commissioner noted recent declines in market share, recent attention by Ecuadorian producers to non-U.S. markets, and low absolute volume. FTC did not point to specific indicators of threat by reason of Ecuadorian imports.

In regard to product shifting, see, *supra,* the general discussion concerning Costa Rica. The court also notes that final dumping margins for Ecuadorian imports ranged from three to nine percent except for one producer that received a higher rate based

---

6. As indicated, the relevant Colombian determination was affirmative.

7. *Yuasa–General Battery Corp. v. United States*, 11 CIT ——, 661 F.Supp. 1214 (1987) does not stand for a contrary position. It does stand for

the position that if evidence of record seems to support a finding of satisfaction of a statutory factor, failure to discuss that factor may result in remand for further explanation.

on best information available. *Certain Fresh Cut Flowers from Ecuador,* 52 Fed. Reg. 8494 (Mar. 18, 1987) (Amended Final Determination of Sales at Less Than Fair Value). That producer was heavily involved in miniature carnations, to the exclusion of standard carnations and chrysanthemums, *see* Confidential Record Document Number (CR) 25J, so that the opportunity for product shifting to miniature carnations seems to be largely missing. If the firms with lower margins had reason to shift production because of some particular factor, it was not made clear by FTC. The case for product shifting is not so strong that the commissioner's decision should be found to be unsupported or otherwise in error.

### C. *Israel*

The pertinent decision with regard to Israeli miniature carnations is found at pages 59–60 of *Flowers I.* In his opinion, the commissioner recognized the relatively high volume of Israeli imports, but noted their somewhat stable market share. The commissioner also noted declining miniature carnation acreage in Israel and rising prices of Israeli imports, while U.S. prices were falling. Furthermore, the Government of Israel and Agrexco, an Israeli exporting concern, point to the timing of Israel's imports, specifically noting that miniature carnations from Israel enter the United States in winter and spring, the time of high demand and lower expectation of injury.

Product shifting does not appear to be an issue. Israel's other exports of concern were gerbera daisies. The determination as to gerberas was negative. The determination is, therefore, sustained as to Israel.

### D. *Peru*

The relevant determination with regard to Peru is found at page 14 of *Flowers II.* The commissioner noted therein the declining market share for Peruvian miniature carnations imports from 1983 to 1985–86. He also observed that absolute share was low.

The court's earlier general comments on product shifting are applicable here. Flores Esmeralda which accounts for almost all imports from Peru had no positive antidumping margin; Peru received a negative antidumping determination overall. *Certain Fresh Cut Flowers from Peru,* 52 Fed.Reg. 7000 (Mar. 6, 1987) (Final Determination of Sales at Not Less Than Fair Value). Countervailing duties were imposed on pompon chrysanthemums, *Certain Fresh Cut Flowers from Peru,* 52 Fed.Reg. 13,491 (Apr. 23, 1987) (Amended Final Countervailing Duty Determination), but the duties were relatively moderate and the acreage devoted to pompons is small in comparison to that already devoted to miniature carnations CR 25J.[8] Thus, there seems to be little potential for product shifting from pompons in Peru. In fact, FTC does not focus on a switch in Peruvian production because of duties on Peruvian imports. Rather, FTC posits a shift of production because of Flores Esmeralda's relation to Colombia. As indicated, certain Colombian producers received affirmative determinations as to threat to the miniature carnation industry. Flores Esmeralda operates in both Peru and Colombia. Flores Esmeralda's Colombian imports, however, were subjected to neither antidumping nor countervailing duties. Furthermore, as indicated, the record does not show a great deal of Peruvian acreage controlled by Flores Esmeralda which likely would be brought into miniature carnation production. In view of the factors noted, the commissioner's determination is found to be supported by substantial evidence.

For all of the foregoing reasons, ITC's remand determination is sustained in its entirety.

This case having been submitted for decision and the Court, after deliberation, having rendered a decision therein; now, in conformity with that decision,

---

**8.** Gypsophila occupies most of the acreage. The gypsophila industry was found to be uninjured and not threatened.

IT IS HEREBY ORDERED that the determination in the above-captioned case by the International Trade Commission is affirmed.