**METALLVERKEN NEDERLAND B.V.,**
**and Outokumpu Metallverken,**
**Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant,**

and

**American Brass, et al.,**
**Defendant–Intervenors.**

**Court No. 88–09–00711.**

United States Court of
International Trade.

July 20, 1990.

Winthrop Stimson, Putnam & Roberts (Thomas V. Vakerics, Kenneth Berlin, Mark A. Monborne, James A. Meade, and Joni A. Laura); Arent, Fox, Kintner, Plotkin & Kahn (Stephen L. Gibson and Callie Georgeann Pappas), for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice (M. Martha Ries); Lyn M. Schlitt, Gen. Counsel, Judith M. Czako, Acting Asst. Gen. Counsel, U.S. Intern. Trade Com'n (Calvin H. Cobb, III), for defendant.

Collier, Shannon & Scott (David A. Hartquist, Jeffrey S. Beckington, and Kathleen Weaver Cannon), for defendant-intervenors.

DiCARLO, Judge:

Metallverken Nederland, a Dutch brass manufacturer, and Outokumpu Metallverken, an importer of Japanese brass, seek review of the remand results ordered in *Metallverken Nederland B.V. v. United States*, 13 CIT ——, 728 F.Supp. 730 (1989). On remand, the United States International Trade Commission determined that the domestic brass industry is materially injured or threatened with material injury by reason of dumped imports of rolled brass sheet and strip from the Netherlands and Japan. *Certain Brass Sheet and Strip From Japan and the Netherlands*, Inv. Nos. 731–TA–379 and 380 (Final) (Remand), USITC Pub. 2255 (Jan. 1990).

The Court finds that this determination is supported by substantial evidence and in accordance with law. As the Court has found the views of three commissioners to be supported by substantial evidence and in accordance with law, it is unnecessary to determine whether a fourth commissioner's affirmative findings on remand in substitution of a former commissioner's negative findings in the original determination were *ultra vires*.

## BACKGROUND

In *Metallverken Nederland B.V. v. United States*, 13 CIT ——, 728 F.Supp. 730 (1989), this Court remanded the portion of the Commission's affirmative material-injury determination addressing threat of material injury because there was substantial doubt whether a mistake of fact as to the date of suspension of liquidation in Commissioner Rohr's analysis of market penetration by Dutch and Japanese brass flawed the determination. The Court also requested a more specific statement in the threat analysis whether expanded Japanese capacity is likely to result in a significant increase in brass exports to the United States and whether there is a real and imminent threat of material injury.

On remand, Commissioner Rohr stated that the mistake in the date of suspension of liquidation had no effect on his analysis of market penetration. He also found that increased Japanese capacity is likely to result in a significant increase in exports to the United States and that the threat of material injury is real and imminent. Plaintiffs argue these findings are unsupported by substantial evidence and are otherwise not in accordance with law.

Although he had not participated in the original determination and questioned the propriety of his participation on remand,

Commissioner Newquist believed the remand order and decisions of this court compelled him to provide his views in the remand determination. These views concurred with the affirmative material-injury findings of Commissioners Eckes and Lodwick previously affirmed by the Court. The addition of Commissioner Newquist's findings changed the original three-commissioner majority to a majority of four commissioners in the remand determination. Plaintiffs argue that the remand order only called for the participation of Commissioner Rohr, and that Commissioner Newquist addressed questions beyond those specified in the remand order. Plaintiffs contend that the Commissioner's additional findings are, therefore, outside the scope of the remand and *ultra vires*. The Court requested additional briefs on this question.

## DISCUSSION

### I. THREAT OF MATERIAL INJURY DETERMINATION ON REMAND

#### A. Mistake of Fact as to the Date of Suspension of Liquidation

█ In his evaluation of import volumes in the original determination, Commissioner Rohr attempted to explain a 1987 decline in market penetration by Dutch and Japanese imports. He noted that the figures "may have been affected by the suspension of liquidation," but erroneously stated that date to be September 1987 rather than February 1988. USITC Pub. 2099 at 32–33. The Court ordered a remand because it was "unable to ascertain to what extent the Commissioner relied on this factor in his analysis and whether his conclusion would have been different had he known the actual date of suspension of liquidation." *Metallverken Nederland,* 13 CIT at ——, 728 F.Supp. at 743.

Commissioner Rohr responded that the date of suspension of liquidation had no special relevance but was mentioned to illustrate his point regarding changes in the import-volume data attributable to the agency proceedings and the weight to be given those data. USITC Pub. 2255 at 5–6.

He explained that the "underlying question was whether the data for 1987 and 1988 reflected normal, ordinary commercial activity or whether they may reflect aberrations caused by our investigations." *Id.* at 6–7.

The Commissioner's conclusion as to the probative value of the data remained unchanged in light of the actual date of suspension of liquidation. He explained that the suspension

is not the only action in connection with a dumping action that may affect the behavior of the buyers and sellers in the market. Affirmative preliminary determinations of the Commission may also affect the market. The initiation of a dumping case in the first instance, and even the filing or rumored filing of a dumping case, can also affect the decision to buy and sell domestic or imported product.

*Id.* at 5, 6. The Commissioner remarked that the antidumping petition in this investigation was filed in July 1987, Commerce initiated the investigation in August 1987, the Commission made its preliminary determination in September 1987, and Commerce, which was to make its preliminary determination in December 1987, issued it in February 1988, at which time liquidation of entries was suspended. *Id.* Thus, he commented:

I had less confidence that 1987 yearly data and the interim 1988 data reflected normal operating conditions from which I would make projections about the future. I did not believe that the declines that the data show would have occurred absent the investigation nor did I believe that they would be reflective of trends were the investigation to be terminated after a negative finding.

This point ... is equally compelling given that September 1987 was the date of the Commission preliminary determination, which is also likely to have an effect on the market, rather than being the date of the Commerce affirmative [determination].

*Id.* at 7.

Plaintiffs contend that the Commissioner's analysis reveals an "arbitrary and ca-

pricious rejection of market penetration data as inherently suspect and unreliable" merely because they happen to fall within the period of the antidumping investigation. Plaintiffs' Comments on Remand Determination at 16 (Plaintiffs' Comments).

Plaintiffs' argument is unpersuasive. The court has previously stated that "the initiation of antidumping and countervailing duty proceedings can create an artificially low demand for affected imports, thus distorting the data on which [the Commission] relies in making its determination." *USX Corp. v. United States*, 11 CIT 82, 88, 655 F.Supp. 487, 492 (1987); *see also Rhone Poulenc, SA v. United States*, 8 CIT 47, 53, 592 F.Supp. 1318, 1324 (1984). Commissioner Rohr evaluated 1987 and 1988 import-penetration data and, finding them to be unrepresentative of normal operating conditions, tempered his reliance on the data accordingly. *See Wieland Werke, AG v. United States*, 13 CIT ——, 718 F.Supp. 50, 61 (1989) ("the Commission acted reasonably in gathering the data, identifying its inherent weaknesses, and tempering its reliance on the data"). Plaintiffs have failed to show that this finding is unsupported by substantial evidence on the record and not in accordance with law.

### B. Productive Capacity and Capacity Utilization

Under 19 U.S.C. § 1677(7)(F)(i)(II), the Commission is directed to consider "any increase in production capacity or existing unused capacity in the exporting country likely to result in a significant increase in imports of the merchandise to the United States." In assessing this factor in his original findings, Commissioner Rohr stated that "given the overall decline in Japanese home market sales, the increase [in Japanese capacity] must be devoted to exports either to the United States or other foreign countries." USITC Pub. 2099 at 33.

In its prior opinion, the Court held that the Commissioner could reasonably conclude from the evidence that increased Japanese capacity would be devoted to exports. *Metallverken Nederland*, 13 CIT at ——, 728 F.Supp. at 744. The plaintiffs claimed, however, that the Commissioner made no finding and the record contains no evidence that increased exports would go to the United States. The Court agreed with the government's contention that it could infer from the Commissioner's findings that he concluded increased exports would be directed to the United States market. Nonetheless, as the Court was remanding on another issue, it requested "an explicit statement with some analysis whether increased capacity is likely to result in a significant increase in exports to the United States." *Id.*

In his findings on remand, the Commissioner remarked:

> That capacity exists to expand exports to the United States at the discretion of the foreign producers is itself threatening. Of course, any showing that it is actually likely to increase shipments to the United States increases the threat potential.
>
> In this case, I believe the facts demonstrate that foreign capacity not only exists but that there is a likelihood that it would result in increased imports.

USITC Pub. 2255 at 9.

Plaintiffs' argue that the Commissioner's analysis suffers from several errors of fact and law. First, they allege that the Commissioner erroneously concluded

> that he does not have to find that there is a likelihood that unused foreign capacity will result in increased imports before he is permitted to consider that "the foreign capacity situation weighed in affirmatively in a threat analysis."

Plaintiffs' Comments at 19 (quoting USITC Pub. 2255 at 9). Plaintiffs argue that this statement contravenes the rule that capacity alone is insufficient to establish a threat of material injury. *See Hannibal Indus., Inc. v. United States*, 13 CIT ——, 710 F.Supp. 332, 337 (1989); *American Spring Wire Corp. v. United States*, 8 CIT 20, 28, 590 F.Supp. 1273, 1280 (1984), *aff'd sub nom. Armco, Inc. v. United States*, 760 F.2d 249 (Fed.Cir.1985).

The Commissioner never stated that, in the absence of support from other factors, foreign capacity alone is a sufficient basis

for an affirmative threat determination. Moreover, *Hannibal* and *American Spring Wire*, refer to the situation where excess capacity was the only relevant economic factor indicating a threat. *Hannibal*, 13 CIT at ——, 710 F.Supp. at 337; *American Spring Wire*, 8 CIT at 28, 590 F.Supp. at 1280. Here, the Commissioner based his conclusion on other factors indicating threat including increased market penetration, decreasing capacity utilization, the ability to shift production, and price suppression or depression of the domestic product. *See* USITC Pub. 2099 at 32–34; USITC Pub. 2255 at 4–10.

■ Plaintiffs allege that the second error is the Commissioner's mistaken view that "most" rather than "all" excess capacity was in Japan. Plaintiffs' Comments at 20. Since the record shows that Dutch capacity expanded in 1987, the Commissioner did not mischaracterize the evidence. Conf.R. 48 at A–44. Notwithstanding this evidence, the Commissioner's statement was not material to his determination. Increased capacity was a factor in the Commissioner's affirmative findings only as to Japanese brass. Section 1677(7)(F)(i) of Title 19 requires the Commission to consider several relevant economic factors, of which capacity is only one. There is no requirement that Commissioner Rohr's affirmative vote be supported by evidence showing unused capacity in the Netherlands as long as other economic factors support a finding of threat from Dutch brass.

As a third error, plaintiffs argue that the Commissioner failed to consider the availability of third-country markets for Japanese exports. Rather, they allege that he

appears to be suggesting, contrary to law, that any unused capacity existing in a foreign country must be completely and irrevocably dedicated to sales to third countries before unused capacity could be viewed as not "weighing in" to support an affirmative determination.

Plaintiffs' Comments at 20–21. The Court disagrees.

In examining threat of material injury, the Commission must "take into account the availability of other export mar-

kets...." *Rhone Poulenc*, 8 CIT at 50 n. 11, 592 F.Supp. at 1322 n. 11 (quoting S.Rep. No. 249, 96th Cong., 1st Sess. 89, *reprinted in* 1979 U.S.Code Cong. & Admin.News 381, 475). The Commissioner weighed plaintiffs' contention that increased exports would not go to the United States against figures showing an increase in Japanese productive capacity. He did not, however, find their arguments "credible in light of the evidence." USITC Pub. 2255 at 10. The Commissioner discounted data showing increasing sales to third-country markets because this increase was not as rapid as the rise in capacity. He explained that the "Japanese argument is credible ... only if it is clear that the additional capacity being placed on line in Japan is related to the increases in sales to [other] markets." *Id.* at 9.

The Commissioner observed that while "Japanese exports to countries other than the United States increased in each year for which the Commission obtained data from the Japanese producers," the data show "that over the period of investigation[,] the proportion of the increases in capacity devoted to third country exports grew smaller every year." *Id.* This finding is supported by record evidence, which also shows Japanese home-market shipments 32 million pounds lower in 1987 than in 1984. USITC Pub. 2099 at a–30. The Commissioner concluded that, while exports to other markets increased, this evidence did not preclude a finding that exports to the United States market would also increase. Thus, Commissioner Rohr considered the availability of third-country markets but reasonably found this evidence to be non-probative.

As a fourth error, plaintiffs allege that the Commissioner made a mistake of fact as to the type of capacity data provided by the Dutch. On remand, the Commissioner again mentioned that capacity figures were not very probative as to production limits because of the ability to shift production from other types of brass. He noted that Dutch capacity data was provided for only C20000 series brass rather than all brass products produced in The Netherlands.

USITC Pub. 2255 at 9, 9 n. 15. Plaintiffs submit that the record shows Metallverken reporting on the basis of all flat-rolled brass. As stated *supra* at page 285, the Commissioner considered but did not rely on increased capacity in The Netherlands because of the concurrent growth in Dutch home-market sales. Accordingly, any mischaracterization of this evidence is immaterial.

■ As for the question of decreasing foreign capacity utilization, the statute directs the Commission to consider "the presence of underutilized capacity for producing the merchandise in the exporting country." 19 U.S.C. § 1677(7)(F)(i)(VI) (1988). The government correctly observes that there is no requirement that the Commission assess the likelihood that underutilized capacity will result in a significant increase in imports as it must when considering increased foreign capacity under 19 U.S.C. § 1677(7)(F)(i)(II).

Plaintiffs' remaining arguments against the Commissioner's finding regarding the destination of increased Japanese exports go to the weight given to the evidence, or allege that the Commissioner ignored certain data.

■ The Commission has broad discretion in assigning the weight given a particular economic factor, and it is presumed to have considered all record evidence. *Metallverken Nederland,* 13 CIT at ——, 728 F.Supp. at 735, 736–37; *National Ass'n of Mirror Mfrs. v. United States,* 12 CIT ——, 696 F.Supp. 642, 645, 648 (1988) (*Mirror Mfrs.*). Thus, the Commissioner need not respond to every piece of evidence raised by the parties, and failure to discuss certain information does not establish that he did not consider it. *Granges Metallverken AB v. United States,* 13 CIT ——, 716 F.Supp. 17, 24 (1989); *Mirror Mfrs.,* 12 CIT at ——, 696 F.Supp. at 648–49. As stated by our court of appeals, the fact that plaintiffs

> can point to evidence of record which detracts from the evidence which supports the Commission's decision and can hypothesize a reasonable basis for a contrary determination is neither surprising

nor persuasive. It is not the function of a court to decide that, were it the Commission, it would have made the same decision on the basis of the evidence. *Matsushita Elec. Indus. Co. v. United States,* 750 F.2d 927, 936 (Fed.Cir.1984).

Commissioner Rohr's finding that Japanese exports were likely to be sent to the United States sufficiently addresses the Court's questions in its prior opinion. Plaintiffs have failed to show that the Commissioner's findings on capacity and capacity utilization are unsupported by substantial evidence or are otherwise not in accordance with law.

### C. Real and Imminent Threat of Material Injury

In his original views, Commissioner Rohr concluded that Dutch and Japanese producers "could easily send" increased exports to the United States which "could easily push the domestic industry over the line into material injury." USITC Pub. 2099 at 34. Plaintiffs argued that this language and the Commissioner's views as a whole did not indicate that the threat of material injury was real and imminent as required under 19 U.S.C. § 1677(7)(F)(ii). The Court stated in its prior opinion:

> Since the Court has already ordered a remand which may affect this question and in order to eliminate any possible doubt as to the Commissioner's meaning, the Court requests a more specific statement whether there is a real and imminent threat of material injury.

*Metallverken Nederland,* 13 CIT at ——, 728 F.Supp. at 747.

On remand, the Commissioner concluded that, based on his original views, "the threat posed by the Japanese and Dutch imports is real and imminent" due to the extreme vulnerability of the domestic industry. USITC Pub. 2255 at 11. Plaintiffs argue that they based their challenge not on the Commissioner's failure to use the statutory language, but rather on the claim that the Commissioner's "determination followed a path, that at a minimum, was not reasonably discernable." Plaintiffs'

Comments at 27. They maintain that the remand determination does not cure this deficiency and that it remains unsupported by substantial evidence because the Commissioner reveals no record evidence showing intent by or incentive on the part of Japanese and Dutch producers to increase exports to the United States.

An affirmative threat determination must be based upon "positive evidence tending to show an intention to increase the levels of importation." *American Spring Wire*, 8 CIT at 28, 590 F.Supp. at 1280. The "essence of the threat lies in the ability and incentive to act imminently." *Republic Steel Corp. v. United States*, 8 CIT 29, 41, 591 F.Supp. 640, 650 (1984).

In his original views, Commissioner Rohr described his task as ascertaining whether the effect of the imports is "likely to be injurious" and whether the threat was "within a reasonably imminent time frame." USITC Pub. 2099 at 32, 34. The Commissioner examined each of the statutory threat factors and premised his affirmative finding of threat upon increases in market penetration by Dutch and Japanese brass, an increase in Japanese productive capacity, price suppression or depression of the domestic product, underutilized Japanese capacity, and the capability of product-shifting by the Dutch producer. *Id.* at 33. The Court has held that each of these findings is supported by substantial evidence and is in accordance with law. In addition, the Commissioner explained on remand that:

> I made the judgement [sic] in my original views that the threat I postulated would have ripened into actual material injury "but for" the suspension of liquidation. This conclusion means that actual injury would have occurred to the domestic industry by July 1988 had not this proceeding intervened. It is difficult to see any threat that could be more real and imminent than one which would have resulted in actual injury "but for" the suspension of liquidation.

USITC Pub. 2255 at 10.

Whether a threat of material injury is real and imminent is established through analysis of the threat factors listed under 19 U.S.C. § 1677(7)(F)(i). *Asociacion Colombiana de Exportadores de Flores v. United States*, 12 CIT ——, 693 F.Supp. 1165, 1171 (1988). After examining these factors and conducting his "but for" analysis, the Commissioner could reasonably infer intent by the Japanese and Dutch producers to increase exports to the United States "within a reasonably imminent timeframe." Such intent is sufficient to meet the requirement under 19 U.S.C. § 1677(7)(F)(ii) that the threat of material injury be real and imminent. *American Spring Wire*, 8 CIT at 28, 590 F.Supp. at 1280.

The Court finds that the Commissioner complied with the remand order and that his findings are supported by substantial evidence and are in accordance with law.

## II. COMMISSIONER NEWQUIST'S VIEWS

On remand, Commissioner Newquist stated his opinion that remands for clarification of the views of majority commissioners still sitting on the Commission should be addressed solely by those commissioners. Therefore, he questioned the propriety of his participation in this remand. Nonetheless, the Commissioner believed that the language of the remand order and the court's decisions in *Asociacion Colombiana de Exportadores de Flores v. United States*, 12 CIT ——, 704 F.Supp. 1068, 1070 n. 2 (1988) and *Citrosuco Paulista, S.A. v. United States*, 12 CIT ——, 704 F.Supp. 1075 (1988), required a remand to the entire Commission and compelled him to provide findings. USITC Pub. 2255 at 13–14.

Plaintiffs argue that the Court's remand order neither authorized nor instructed any commissioner other than Commissioner Rohr to participate in the remand. Plaintiffs' Comments on Remand Determination, at 4. Therefore, participation by other commissioners was outside the scope of the remand order and *ultra vires*. *Id.* at 5. Plaintiffs specifically target Commissioner Newquist's participation because his affirmative findings of material injury

changed the original three commissioner majority to a majority of four commissioners in the remand determination.

The additional briefs ordered by the Court on the question of the scope of the remand revealed a split in the Commission on the issue of which commissioners may or should participate in a remand. All commissioners agree that a remand directed to the entire Commission is in keeping with consistent practice of the court and its statutory remand authority. U.S. International Trade Commission Memorandum Regarding Participation of Commissioners on Remand, at 4–5. Nevertheless, three commissioners argue that it would be improper for the court to specify which commissioners are required or permitted to participate in a remand proceeding. *Id.* at 6. They contend that the Commission practice is for all sitting commissioners to participate in remands and that this practice is consonant with the statutory scheme to promote prompt resolution of cases. *Id.* at 7.

The remaining three commissioners maintain that "[p]articipation by fewer than all commissioners is lawful and appropriate when the error found by the Court may be corrected by sitting Commissioners whose views were found to require clarification or correction." *Id.* at 8. The assert that the Commission's transmittal of a response to a remand order by less than all commissioner's may, in appropriate circumstances, constitute action by the entire Commission. *Id.* at 9. While plaintiffs and defendant-intervenors argue the position of one or the other set of commissioners on this question, no brief discusses what constitutes "participation" in a remand.

■ The Court disagrees that the remand order was directed solely to Commissioner Rohr. The order followed the general rule that remands are to the Commission as a whole. *See* 19 U.S.C. § 1516a(c)(3) (1988); *USX Corp. v. United States,* 12 CIT ——, 698 F.Supp. 234, 236 n. 3 (1988); *see generally, SCM Corp. v. United States,* 2 CIT 1, 519 F.Supp. 911 (1981); *Sprague Elec. Co. v. United States,* 84 Cust.Ct. 243, 488 F.Supp. 910 (1980).

The Commission has broad discretion in fashioning its procedures. *See FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 143, 60 S.Ct. 437, 441–42, 84 L.Ed. 656 (1940). Under the circumstances of this case, it is unnecessary to address plaintiffs' contentions that the substitution of Commissioner Newquist's affirmative material-injury findings for the former commissioner's negative material-injury findings exceeded the scope of the remand. This is because the final affirmative determination is based on two affirmative material-injury votes and Commissioner Rohr's affirmative threat of material-injury vote which are supported by substantial evidence and in accordance with law. *See USX Corp. v. United States,* 12 CIT ——, 682 F.Supp. 60, 63 (1988); *BMT Commodity Corp. v. United States,* 11 CIT 524, 526, 667 F.Supp. 880, 882, *reh'g denied,* 11 CIT 854, 674 F.Supp. 868 (1987), *aff'd.* 852 F.2d 1285 (Fed.Cir. 1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1120, 103 L.Ed.2d 183 (1989).

## CONCLUSION

The Court finds Commissioner Rohr's findings on remand to be supported by substantial evidence and in accordance with law. As the Court has found the views of three commissioners to be supported by substantial evidence and in accordance with law, it is unnecessary to determine whether a fourth commissioner's affirmative findings on remand in substitution of a former commissioner's negative findings in the original determination were *ultra vires.* This action is dismissed.