**BANDO CHEMICAL INDUSTRIES, LTD. and Bando American Inc., Plaintiffs,**

v.

**UNITED STATES, Defendant.**

**PIRELLI TRASMISSIONI INDUSTRIA-LI, S.P.A. and Pirelli Industrial Products Corporation, Plaintiffs,**

v.

**The UNITED STATES, Defendant.**

**Nos. 89–07–00399, 89–07–00430.**

United States Court of
International Trade.

March 5, 1992.

Gibson, Dunn & Crutcher, Joseph H. Price, Donald Harrison, Naoyuki Agawa and Sharon T. Maier, Washington, D.C., for plaintiffs Bando Chemical Industries, Ltd. and Bando American Inc.

Barnes, Richardson & Colburn, Matthew T. McGrath and Peter L. Sultan, New York City, for plaintiffs Pirelli Trasmissioni Industriali, S.p.A. and Pirelli Industrial Products Corp.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice, Washington, D.C., M. Martha Ries, Seattle, Wash., for defendant.

Office of the Gen. Counsel, U.S. International Trade Com'n, Lyn M. Schlitt, James A. Toupin and George Thompson, for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Jessica Wasserman and Patrick J. McDonough and James E. Nelson, Gates Rubber Co., of counsel, for intervenor-defendant.

## MEMORANDUM & ORDER

AQUILINO, Judge:

Before the court is a motion by the Bando plaintiffs for judgment on the records (1) of the U.S. International Trade Commission ("ITC") declaring unlawful its final affirmative determination *sub nom. Industrial Belts from Israel, Italy, Japan, Singapore, South Korea, Taiwan, The United Kingdom, and West Germany,* 54 Fed. Reg. 24,430 (June 7, 1989), in regard to Japan and (2) of the International Trade Administration, U.S. Department of Commerce ("ITA") revoking or otherwise revising its *Antidumping Duty Order of Sales at Less Than Fair Value; Industrial Belts and Components and Parts Thereof, Whether Cured or Uncured, From Japan,* 54 Fed.Reg. 25,314 (June 14, 1989).

On their part, the plaintiffs Pirelli have interposed a motion for partial summary judgment, reversing the aforesaid final determination of the ITC with respect to the indicated merchandise from Italy. They state in their brief, note 1 that they also seek review of the antidumping-duty order against them[1] but

---

**1.** *See* 54 Fed.Reg. 25,313 (June 14, 1989).

are now moving for partial summary judgment with respect to only the Commission's determination as detailed in Count 1 of the Complaint. If plaintiffs' challenge to the Commission's determination is successful, and that determination is reversed, the ITA's antidumping duty order will be rescinded and review of the ITA's action will be unnecessary.

This stated approach is in obvious accord with orderly procedure. *Cf. Roses, Inc. v. United States*, 13 CIT 1012, 1989 WL 154270 (1989). Indeed, plaintiffs' motions focus on the determination of but one member of the ITC, who concluded that material injury did not exist but that the domestic industries producing V-type and synchronous-type power-transmission belts are threatened with such injury by reason of imports from Italy and Japan found by the ITA to be sold in the United States at less than fair value and also that the domestic industry producing all other types of power-transmission belts is threatened with material injury by reason of imports from Japan found by the ITA to be sold at less than fair value.[2]

In making such a determination of threat of material injury, a commissioner shall consider, among other relevant economic factors:

(II) any increase in production capacity or existing unused capacity in the exporting country likely to result in a significant increase in imports of the merchandise to the United States,

(III) any rapid increase in United States market penetration and the likelihood that the penetration will increase to an injurious level,

(IV) the probability that imports of the merchandise will enter the United States at prices that will have a depressing or suppressing effect on domestic prices of the merchandise,

(V) any substantial increase in inventories of the merchandise in the United States,

(VI) the presence of underutilized capacity for producing the merchandise in the exporting country,

(VII) any other demonstrable adverse trends that indicate the probability that the importation (or sale for importation) of the merchandise (whether or not it is actually being imported at the time) will be the cause of actual injury [and]

(VIII) the potential for product-shifting if production facilities owned or controlled by the foreign manufacturers, which can be used to produce products subject to investigation(s) under section 1671 or 1673 of this title or to final orders under section 1671e or 1673e of this title, are also used to produce the merchandise under investigation[.]

19 U.S.C. § 1677(7)(F)(i). The statute further directs that any such determination "be made on the basis of evidence that the threat of material injury is real and that actual injury is imminent.... [It] may not be made on the basis of mere conjecture or supposition." 19 U.S.C. § 1677(7)(F)(ii); S.Rep. No. 249, 96th Cong., 1st Sess. 88–89 (1979). *See also Metallverken Nederland B.V. v. United States*, 13 CIT 1013, 1029, 728 F.Supp. 730, 742 (1989), citing *Hannibal Industries, Inc. v. United States*, 13 CIT 202, 209–10, 710 F.Supp. 332, 338 (1989), and *Rhone Poulenc, S.A. v. United States*, 8 CIT 47, 59, 592 F.Supp. 1318, 1329 (1984). Such determinations "require a careful assessment of identifiable current trends and competitive conditions in the marketplace ... [and] a thorough, practical, and realistic evaluation of how it operates, the role of imports in the market, the rate of increase in unfairly traded imports, and their probable future impact on the industry." H.R. Conf. Rep. No. 1156, 98th Cong., 2d Sess. 174–75 (1984), U.S.

---

2. *See Industrial Belts From Israel, Italy, Japan, Singapore, South Korea, Taiwan, The United Kingdom, and West Germany*, USITC Pub. 2194, pp. 25–26 (May 1989) (Views of Commissioner David B. Rohr). These views on threat, derived, as indicated, by analytical subdivision of the overall domestic industry and coupled with determinations of actual injury by Commissioners Eckes and Newquist, constituted an affirmative final determination of material injury by the ITC under 19 U.S.C. § 1677(11), Chairman Brunsdale, Vice Chairman Cass and Commissioner Lodwick dissenting. *See* 54 Fed.Reg. at 24,430–31. *See generally MBL (USA) Corporation v. United States*, 16 CIT —, 787 F.Supp. 202 (1992).

Code Cong. & Admin.News 1984, pp. 4910, 5291, 5292. *See also Yuasa–General Battery Corp. v. U.S. Int'l Trade Commission,* 11 CIT 382, 389, 661 F.Supp. 1214, 1220 (1987).

Commissioner Rohr states that he considered each of the statutory factors, but he discusses only those deemed relevant to his decision, pointing out that most of the data apply to one or two firms, are highly confidential and thus can be referred to "only in the most general terms."[3] His entire published statement with respect to Italy is:

> Italian industry production and capacity figures tend to provide a moderate amount of support for an affirmative threat finding. The same conclusion is supported by an examination of the relative geographic dispersion of Italian industry shipments. Pricing data show a consistent pattern of underselling, which, in the circumstances of these investigations, provide[ ] modest support for an affirmative threat finding. Finally, I note that there is moderate support for an affirmative threat finding with respect to import market penetration levels in the V–Belt producing industry, and strong support for an affirmative threat finding with respect to the Synchronous Belt producing industry. The import penetration figures provide moderate support for a negative threat finding with respect to the All Other Belt producing industry. On balance, I conclude that Italian imports present a real and imminent threat of material injury to the V–Belt and Synchronous Belt producing domestic industries, but that Italian imports do not present a threat to the All Other Belt producing industry.

USITC Pub. 2194 at 45. As for Japan, he states in toto:

> The production and capacity figures for the Japanese industry provide relatively strong support for an affirmative threat determination. I note that the capacity utilization figures suggest that the capacity numbers provided to the Commission do not really pose a significant restraint on production. The data on the geographic distribution of Japanese shipments indicate[ ] the importance of the U.S. market and also support an affirmative threat finding. Pricing data also show underselling and moderate support for the possibility of price suppression. Import penetration data provide[ ] strong support for an affirmative finding of threat for all three industries. I therefore conclude that Japanese imports pose a real and imminent threat of material injury to the V–Belt, Synchronous Belt and All Other Belt producing domestic industries.

*Id.* at 46.

As the defendant and the intervenor-defendant point out, the commissioner is presumed to have considered the entire record and had "broad discretion in assigning the weight given a particular economic factor". *Metallverken Nederland B.V. v. United States,* 14 CIT ——, ——, 744 F.Supp. 281, 286, *appeal dismissed,* No. 90–1526 (Fed. Cir.1990). Moreover, he was not required to "respond to each piece of evidence provided by the parties". *Granges Metallverken AB v. United States,* 13 CIT 471, 478–79, 716 F.Supp. 17, 24 (1989). And it is also true that a record may support several acceptable alternatives and that the court may not substitute its view of the data for that of the ITC but may only consider whether a challenged determination is supported by substantial evidence. *See, e.g., id.,* 13 CIT at 475–76, 716 F.Supp. at 21.

Here, in contending that such evidence does not exist, the Bando plaintiffs refer to the opening of two U.S. facilities purportedly capable of producing belts of the kind at issue, capacity and capacity utilization data, increasing domestic demand, statements of intent from Japanese producers, end-of-period inventories, and the lack of reliable[ pricing data. The Pirelli plaintiffs argue that the commissioner relied on the wrong import-penetration data, disregarded

---

3. USITC Pub. 2194 at 44. Apparently, Chairman Brunsdale and Vice Chairman Cass also had concerns about confidentiality but chose to provide confidential versions of their views. *See* ITC record confidential document 46.

capacity-utilization information, misinterpreted capacity data, used unreliable pricing data, unlawfully relied on production levels, and finally that the geographic dispersion of their exports does not support a finding of real and imminent threat.

As stated, Commissioner Rohr is presumed to have considered all of these points. That presumption alone, however, is not enough to sustain his determination—it must have a reviewable, reasoned basis. *See, e.g., A. Hirsh, Inc. v. United States*, 14 CIT ——, ——, 729 F.Supp. 1360, 1362 (1990), *aff'd*, 948 F.2d 1240 (Fed.Cir. 1991), and cases cited therein. As explained in *Asociacion Colombiana de Exportadores de Flores v. United States*, 12 CIT 1174, 1177, 704 F.Supp. 1068, 1071 (1988), that an

administrative agency may make varying decisions based on the facts of particular cases does not permit the agency to act arbitrarily. In order to ascertain whether action is arbitrary, or otherwise not in accordance with law, reasons for the choices made among various potentially acceptable alternatives usually need to be explained.

In the cases at bar, the court is unable to determine, for example, either why the commissioner chose to discount the points raised by Bando or the data upon which he relied in reaching his determination as to Italy. In short, he seems to have failed to articulate a "rational connection between the facts found and the choice made." *Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974), quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168, 83 S.Ct. 239, 245, 9 L.Ed.2d 207 (1962). Hence, plaintiffs' respective motions must be granted at least to the extent that the underlying proceedings be remanded to the ITC to enable Commissioner Rohr to reflect on, and explain further, his views that the domestic industries producing the respective power-transmission belts are faced with threats of imminent material injury by reason of imports from Italy and from Japan. Any supplemental discussion shall be filed with the court within 45 days of the date hereof, whereupon the plaintiffs may have 30 days to comment thereon, with the defendant and the intervenor-defendant then entitled to 15 days for any reply thereto.

So ordered.