**HYUNDAI PIPE CO., LTD., Union Steel Mfg. Co., Ltd., Pusan Pipe Co., Ltd. and Korea Steel Pipe Co., Ltd., Plaintiffs,**

v.

**U.S. INTERNATIONAL TRADE COMMISSION and the United States, Defendants.**

**Court No. 84–6–00763.**

United States Court of International Trade.

Feb. 23, 1987.

Mudge, Rose, Guthrie, Alexander & Ferdon, N. David Palmeter, Donald B. Cameron, Jeffrey S. Neeley and Kevin B. Dwyer, Washington, D.C., for plaintiffs.

Lyn M. Schlitt, General Counsel, Michael P. Mabile, Asst. Gen. Counsel, U.S. Intern. Trade Com'n, Edwin J. Madaj, Jr., Washington, D.C., for defendant.

Schagrin Associates, Roger B. Schagrin and Paul W. Jameson, Washington, D.C., for amicus curiae The Committee on Pipe and Tube Imports.

## Memorandum Opinion and Order

DiCARLO, Judge:

Plaintiffs bring an action pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (Supp. III 1985), to contest the final affirmative injury determination of the United States International Trade Commission (Commission) in the antidumping investigation of *Certain Welded Carbon Steel Pipes and Tubes From the Republic of Korea and Taiwan*, 49 Fed. Reg. 19,747 (May 9, 1984). The Court has jurisdiction under 28 U.S.C. § 1581(c) (1982). The Court holds that the determination is supported by substantial evidence and in accordance with law.

### I. Background

Following the final determination by the United States Department of Commerce, International Trade Administration (Commerce) that certain small diameter circular welded carbon steel pipes and tubes from Korea and Taiwan, and certain welded carbon steel pipes and tubes of light-walled rectangular (including square) cross sections from Korea were being sold in the United States at dumping margins of .90% and 1.47%, the Commission made its final determination that an industry in the United States is materially injured by reason of such imports. The average underselling margins for these classes of merchandise were 30% and 19%.

Plaintiffs challenge the Commission's determination as not supported by substantial evidence or otherwise in accordance with law because the Commission failed to engage in "margins analysis", *i.e.*, the Commission did not consider in connection with its causation analysis under 19 U.S.C. § 1677(7)(B) (1982), the size of the dumping margins compared to the average underselling margins.

### II. Discussion

The question presented is whether the Trade Agreements Act of 1979 and the practices established by the Commission require the Commission to consider the size of dumping margins in making its final determination.

Section 101 of the Trade Agreements Act of 1979 (1979 Trade Act), 19 U.S.C. § 1673d(b)(1) (1982) (amended 1984) states:

The Commission shall make a final determination of whether—

(A) an industry in the United States—

(i) is materially injured, or

(ii) is threatened with material injury, or

(B) the establishment of an industry in the United States is materially retarded,

by reason of imports of the merchandise with respect to which the administering authority has made an affirmative determination under subsection (a)(1) of this section.

Section 101 of the 1979 Trade Act, 19 U.S. C. § 1677(7)(B) (1982) states:

In making its determinations under sections 1671b(a), 1671d(b), 1673b(a), and 1673d(b) of this title, the Commission shall consider, among other factors—

(i) the volume of imports of the merchandise which is the subject of the investigation,

(ii) the effect of imports of that merchandise on prices in the United States for like products, and

(iii) the impact of imports of such merchandise on domestic producers of like products.

Using these criteria, the Commission majority found injury to a domestic industry based on findings of increased volume and market penetration of the subject imports, declining import prices, underselling, and sales lost by the domestic industry because of lower import prices. *Certain Welded Carbon Steel Pipes and Tubes from the Republic of Korea and Taiwan*, Inv. Nos. 731–TA–131, 132, and 138 (Final) USITC Pub. 1519 (April 1984). The one dissenting Commissioner found no causal link between imports and injury to the domestic industry because dumping accounted for only a small part of the underselling margins. *Id.* at 20–27 (Stern, dissenting).

Two of the three commissioners constituting the Commission majority expressed their views on why margin size did not play a role in the injury determination. Chairman Eckes noted (1) the statute specifically requires the Commission to consider the effect of imports in determining causation, (2) despite an ambiguous legislative history, the statute does not mention margins or suggest that the size of margins is dispositive of the causation issue, and (3) while the value of an antidumping order based on a low margin may be subject to question, it is the function of Commerce, and not the Commission, to determine if margins are *de minimis*. *Id.* at 11, n. 46. Commissioner Haggart stated, "there is no suggestion in the statutory definition of material injury, which applies both to countervailing and antidumping duty determinations, that the Commission should base its injury finding on the price effect of the subsidy or the LTFV [Less Than Fair Value] margins." *Id.* n. 47. Commissioner Haggart also referred to her additional views in *Certain Carbon Steel Products from Spain*, Inv. Nos. 701–TA–155, 157–160, 162 (Final), USITC Pub. 1331 at 26–36 (December 1982), which contains extensive reasoning why the Commission is required to find a causal nexus between imports and material injury, and not between the margin and material injury.

Plaintiffs contend that the interpretation of the Commission majority would contravene legislative history, violate the international agreement which the statute was intended to implement, and reverse established prior practice.

1.  Legislative History

Plaintiffs argue that portions of the legislative history of the 1979 Trade Act demonstrate that Congress intended that the Commission consider margins in making its determinations. The Senate Report states:

> The current practice by the ITC with respect to causation will continue under section 735. In determining whether injury is "by reason of" less-than-fair-value imports, the ITC now looks at the effects of such imports on the domestic industry.... It also considers, among other factors, the quantity, nature, and rate of importation of the imports subject to the investigation, and how the effects of the margin of dumping relate to the injury, if any, to the domestic industry. Current ITC practice with respect to which imports will be considered in determining the impact on the U.S. industry is continued under the bill.

S.Rep. No. 249, 96th Cong., 1st Sess. 74 (1979), U.S.Code Cong. & Admin.News 1979, pp. 381, 460. The report further states:

> For one industry, an apparently small volume of imports may have a significant impact on the market; for another the same volume might not be significant. Similarly, for one type of product, price may be the key factor in making a decision as to which product to purchase and a small price differential resulting from the amount of the subsidy or the margin of dumping can be decisive; for others, the size of the differential may be of lesser significance.

*Id.* at 88, U.S.Code Cong. & Admin.News 1979, p. 474. A third reference to margins analysis is provided in the House Report:

> The ITC must complete its investigation within 120 days. This time frame provides the ITC with at least 45 days after the final affirmative determination by

the Authority to complete its investigation in order to allow it to take into account any differences between the Authority's preliminary and final determination (e.g., in dumping margins).

H.R.Rep. No. 317, 96th Cong. 1st Sess. 68 (1979).

Defendant argues that even if ambiguity required the Court to look beyond the statutory language, legislative history does not show that Congress intended to require the Commission to consider the size of margins. "At most, the legislative history, read in light of the statute, might indicate that the size of the LTFV margin may be an appropriate 'other' factor under section 771(7)(B) if the Commission deems that factor to be relevant or probative." Brief for defendant at 22.

The Committee on Pipe and Tube Imports, representing domestic producers of the merchandise, argues as *amicus curiae* that the size of margins may never be considered, based on the language of the statute and parts of the legislative history which state that the Commission must determine whether an industry in the United States is materially injured by reason of imports. However, neither the statute nor those parts of the legislative history cited by *amicus curiae* specifically prohibit the use of margins analysis as a factor in determining injury.

■ Based on the language of the statute and relevant legislative history, the Court holds that the Commission is not barred from examining margins in carrying out its duties under the 1979 Trade Act. But neither must the Commission always examine margins in making determinations under section 1673d(b)(1). Since Congress identified those factors which the Commission must consider, and did not include margins among those factors, Congress did not mandate that margins analysis be used. *See Maine Potato Council v. United States*, 613 F.Supp. 1237, 9 CIT —— (1985). At most, the views contained in the Senate and House Reports show that margins may be given weight by the Commission in its determinations.

Since Congress has not required or prohibited margins analysis under the 1979 Trade Act, the Court holds that the statute grants the Commission discretion in determining whether and when it is appropriate to consider margins "among other factors." 19 U.S.C. § 1677(7)(B).

### 2. International Obligations

Plaintiffs argue that a purpose of the 1979 Trade Act was to implement the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade (Antidumping Code or Code), *reprinted in* H.R.Doc. No. 153, 96th Cong., 1st Sess. pp. 309–337 (1979). According to plaintiffs, article 3, paragraph 4 of the Antidumping Code requires the Commission to consider the size of dumping margins:

It must be demonstrated that the dumped imports are, *through the effects of dumping,* causing injury within the meaning of this Code. There may be other factors which at the same time are injuring the industry, and the injuries caused by other factors must not be attributed to the dumped imports.

Antidumping Code at 5, *reprinted in* H.R. Doc. No. 153, 96th Cong., 1st Sess. at 315 (emphasis added) (footnotes omitted).

Defendant says that the Antidumping Code need not be interpreted to require consideration of margins since a footnote clarifying the phrase "through the effects of dumping" refers to Article 3, paragraph 2 of the Code, which does not refer to margins:

With regard to volume of the dumped imports the investigating authorities shall consider whether there has been a significant increase in dumped imports, either in absolute terms or relative to production or consumption in the importing country. With regard to the effect of the dumped imports on prices, the investigating authorities shall consider whether there has been a significant price undercutting by the dumped imports as compared with the price of a like product of the importing country, or whether the effect of such imports is otherwise to depress prices to a signifi-

cant degree or prevent price increases, which otherwise would have occurred, to a significant degree. No one or several of these factors can necessarily give decisive guidance.

Defendant further contends that if the Code did require that margins be considered, it would conflict with the statute. In that case, the language of the statute would prevail, under section 3(a) of the 1979 Trade Act, 19 U.S.C. § 2504(a), which states:

No provision of any trade agreement approved by the Congress under section 2503(a) of this title, nor the application of any such provision to any person or circumstance, which is in conflict with any statute of the United States shall be given effect under the laws of the United States.

The Court holds that the Code does not unambiguously require that margins be considered as a mandatory factor in the Commission's determinations. The Commission is within its discretion in administering the material injury test so long as its policies are consistent with the terms of the statute. Therefore the Commission's decision not to use margins analysis in this case is not rendered unlawful by the Antidumping Code.

### 3. Past Commission Practice

Plaintiffs argue that the Commission has used margins analysis in the past and must continue that practice under the rule that "[a]n agency in its deliberations is under an obligation to follow, distinguish, or overrule its own precedent." *Local 777, Democratic Union Organizing Comm. v. NLRB*, 603 F.2d 862, 872 (D.C.Cir.1978); *see M.M. & P. Maritime Advancement, Training, Educ. and Safety Program v. Department of Commerce*, 729 F.2d 748, 755 (Fed.Cir.1984); *Greater Boston T.V. Corp. v. FCC*, 444 F.2d 841, 852 (D.C.Cir. 1970), *cert. denied*, 403 U.S. 923, 91 S.Ct. 2229, 29 L.Ed.2d 701 (1971).

Margins analysis was used in some injury determinations under the Antidumping Act of 1921, Ch. 14, tit. II, 42 Stat. 11 (1921) (previously codified as amended at 19 U.S.C. § 160 *et seq.* (1976)). Plaintiffs say that the first such determination was in *Vital Wheat Gluten from Canada*, Inv. No. AA 1921–37, TC Pub. 126 (Apr.1964), where the Commission found no injury to a domestic industry since import prices and quantities would not have been significantly different had the imports been sold at fair value. Plaintiffs argue that in 53 instances under the 1921 Act and several instances under the 1979 Act, margins were considered as a factor in Commission determinations.

According to defendant, the last determination in which a majority of Commissioners used margins analysis was in *Anhydrous Sodium Metasilicate from France*, Inv. No. 731–TA–25 (Final), USITC Pub. 1118 (December 1980). In *Certain Carbon Steel Products from Spain*, Inv. Nos. 701–TA–155, 157–160 and 162 (Final), USITC Pub. 1331 at 14 (December 1982), the following reason was given for not using margins analysis:

The statute does not direct the Commission to consider the amount of the net subsidy in determining whether there is material injury. At most, the amount of the net subsidy is a factor which the Commission may consider under section 771(7)(B) of the Act.

It is the perpetuation of this policy which plaintiffs allege to be an unlawful violation of past agency practice.

■ The Court holds that the reasoning given in the *Spanish Steel* case does not contravene legislative intent. The Court further holds that the determination challenged by plaintiffs does not violate a consistent agency practice since margins analysis has never been more than a discretionary factor in determining injury.

■ Plaintiffs nonetheless argue that in view of the Commission's position that margins may carry some weight in some circumstances, *see* Transcript of Oral Argument at p. 16, the Commission has an obligation to articulate the circumstances when margins will be taken into consideration, and to determine whether those circumstances are present in this case. In other

words, plaintiffs would have the Court remand the case to the Commission with instructions that the Commission must discuss the relevance or irrelevance of margins in its determination.

Plaintiffs cite no authority obligating the Commission to expound on discretionary factors not deemed relevant to its determinations. To require the Commission to do so would, in the Court's opinion, elevate margins analysis to the status of a factor which the Commission must consider, contrary to the plain language of the statute.

### III. Conclusion

The statute does not require the Commission to address margins in injury determinations. Nor has the Commission established a practice requiring margins analysis in determining injury. The Commission is not obligated by statute or by past practice to discuss why margins analysis was not used in a particular determination.

The action is dismissed. Judgment will be entered accordingly. So ordered.