**MINEBEA CO., LTD. and NMB Corporation, Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**The Torrington Company, Defendant–Intervenor.**

Court No. 89–06–00344.

United States Court of International Trade.

Jan. 29, 1992.

Tanaka, Ritger & Middleton, Michele N. Tanaka, Alice L. Mattice and Michael J. Brown, Washington, D.C., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice, Jeanne E. Davidson, of counsel: John D. McInerney, Senior Counsel, Douglas S. Cohen, Craig R. Giesse, Diane M. McDevitt, Stephanie J. Mitchell and Maria Solomon, Atty.–Advisors, Office of the Chief Counsel for Import Admin., Dept. of Commerce, Washington, D.C., for defendant.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and William A. Fennell, Washington, D.C., for defendant-intervenor.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, Minebea Co., Ltd and NMB Corporation (collectively "Minebea"), move pursuant to Rule 56.1 of the Rules of this Court for judgment upon the agency record of the Department of Commerce, International Trade Administration ("Commerce" or "ITA"), in *Final Determinations of Sales at Less Than Fair Value; Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From Japan,* 54 Fed.Reg. 19,101 (1989). Specifically, Minebea contests the finding by the ITA that petitioner, the Torrington Company ("Torrington"), had standing to file an antidumping petition on behalf of the domestic manufacturers of spherical plain bearings, and the finding that rod ends manufactured by plaintiffs were within the scope of the investigations.

The facts of this case have been recounted in detail in several related cases, includ-

ing *NTN Bearing Corp. of America v. United States*, 15 CIT ——, 757 F.Supp. 1425 (1991), and *SKF USA, Inc. v. United States Dep't of Commerce*, 15 CIT ——, 762 F.Supp. 344 (1991). Briefly, the ITA determined that Torrington's petition, dated March 31, 1988, was filed on behalf of the domestic American industries which manufacture ball bearings, spherical roller bearings, cylindrical roller bearings, needle roller bearings and spherical plain bearings, and an investigation of imports of those bearings ensued. *Final Determination of Sales at Less Than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany* ("Final Determinations"), 54 Fed.Reg. 18,992, 19,006 (1989). The ITA also determined that rod ends, a product manufactured by Minebea, are a type of plain bearing subject to the investigation. *Id.* at 19,010.

### Discussion

■ A final determination by the Department of Commerce will be affirmed unless that determination is not supported by substantial evidence or is otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States*, 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988).

■ Under this standard, Commerce is granted considerable deference "in both its interpretation of its statutory mandate and the methods it employs in administering the antidumping law." *Chemical Prods. Corp. v. United States*, 10 CIT 626, 628, 645 F.Supp. 289, 291 (1986) (citations omitted). Where Commerce is faced with two reasonable alternatives, the Court will not impose its preference, provided the alternative selected by the ITA is supported by substantial evidence in the administrative record. *Torrington Co. v. United States*,

14 CIT ——, 745 F.Supp. 718, 723 (1990), *aff'd*, 938 F.2d 1276 (Fed.Cir.1991).

### I. Standing

■ Minebea challenges the determination by Commerce that Torrington had standing to file an antidumping petition on behalf of the domestic industry which produces spherical plain bearings. Plaintiffs contend that the ITA did not base its analysis on sufficient data and should have relied upon data collected by the International Trade Commission ("ITC") in its injury determination.

■ The statutory requirements for initiation of an antidumping proceeding by petition are that "an interested party ... files a petition with the administering authority, on behalf of an industry which alleges the elements necessary for the imposition of the duty imposed by section 1673 of this title, and which is accompanied by information reasonably available to the petitioner supporting those allegations." 19 U.S.C. § 1673a(b)(1) (1988). It is for Commerce to determine whether those requirements have been met, and the ITA has broad discretion in reaching its decision. *NTN Bearing*, 15 CIT at ——, 757 F.Supp. at 1429.

Minebea faults the ITA's determination because it lacks figures on total United States production of spherical plain bearings and thus any decision regarding standing is grounded in ignorance. *Plaintiffs' Memorandum in Support of Motion for Judgment Upon the Agency Record Pursuant to USCIT R. 56.1* at 15. The ITA's policy is to presume standing unless a majority of the domestic industry affirmatively opposes the petition. This presumption was affirmed in *NTN Bearing*. 15 CIT at ——, 757 F.Supp. at 1429. *See also Comeau Seafoods Ltd. v. United States*, 13 CIT 923, 927, 724 F.Supp. 1407, 1411 (1989). The only domestic manufacturer of spherical plain bearings to oppose Torrington's standing was New Hampshire Ball Bearings ("NHBB"), a subsidiary of Minebea. Administrative Record ("AR") (Pub.) Doc. 58. However, NHBB provided no information as to its share of the domestic market,

and thus the ITA found that the presumption in favor of standing was not rebutted. This conclusion was reasonable and comported with the law.

In *NTN Bearing*, the court affirmed Commerce's conclusion that petitioner herein possessed standing with regard to ball bearings, spherical roller bearings, cylindrical roller bearings, needle roller bearings and spherical plain bearings. 15 CIT at ——, 757 F.Supp. at 1431. Concerning the challenge to Torrington's standing in the spherical plain bearings industry, the Court adheres to its opinion in *NTN Bearing*, and finds that Commerce properly determined that petitioner possessed standing to file an antidumping petition on behalf of that domestic industry.

Additionally, the Court notes that it is the responsibility of the ITA to determine standing by its own standards and no statute or regulation requires that, in making that finding, the ITA must defer to data used by the ITC. 19 U.S.C. § 1673a(c) (1988). Accordingly, the determination by the ITA that Torrington possessed standing to file the petition is affirmed.

## II. Scope

■ Minebea also challenges the ITA's conclusion that rod ends and rod end bearings are within the spherical plain bearings class of antifriction bearings. First, plaintiffs assert that rod ends without rolling elements were not specifically named in the petition and therefore should have been excluded from the scope of the investigations. Alternatively, plaintiffs claim that such rod ends should have been excluded because they are airframe components unrelated to the reduction of friction, a group which the ITA specifically excluded from the investigations.

■ This court has recognized that Commerce retains broad discretion to define and clarify the scope of an antidumping investigation in a manner which reflects the intent of the petition. *Mitsubishi Elec. Corp. v. United States*, 12 CIT 1025, 1042, 700 F.Supp. 538, 552 (1988), *aff'd*, 898 F.2d 1577 (Fed.Cir.1990); *see also Gold Star Co. v. United States*, 12 CIT 707, 709, 692 F.Supp. 1382, 1384 (1988), *aff'd sub nom.*, *Samsung Elec. Co. v. United States*, 873 F.2d 1427 (Fed.Cir.1989). That discretion must be exercised reasonably and any consequent determination must be supported by substantial evidence in the administrative record. *American Lamb Co. v. United States*, 785 F.2d 994, 1001 (Fed.Cir. 1986); *Gold Star*, 12 CIT at 708, 692 F.Supp. at 1383.

■ When a question arises as to whether a particular product is within the scope of an *investigation*, the ITA first must determine whether the petition covers that product. If the petition is ambiguous, Commerce then examines additional documentary evidence. If the scope is still unclear, Commerce looks to other criteria, including the factors enumerated in *Diversified Prods. Corp. v. United States*, 6 CIT 155, 162, 572 F.Supp. 883, 889 (1983).[1] *See Final Determinations*, 54 Fed.Reg. at 19,-007.

The question here is whether rod ends and rod end bearings were properly included in the investigations. Minebea contends that those products are "airframe components which are obviously unrelated to the reduction of friction," which Commerce specifically excluded from the investigations. AR (Pub.) Doc. 72 at 3. Torrington's petition, normally the first point of reference, contains scant reference to rod ends, *per se*. However, following initiation of the investigation, Minebea requested that the ITA exclude "rod end/spherical plain bearings" from the investigations. AR (Pub.) Doc. 58. The ITA denied the request and issued a decision memorandum on June 13, 1988, less than three months after Torrington's petition was filed, which

---

1. These factors include the general physical characteristics of the merchandise, the expectations of the ultimate purchasers, channels of trade in which the goods travel, the ultimate use of the product, and its cost or manner of advertising or display. *Id.* *See also Kyowa Gas* *Chem. Indus. Co. v. United States*, 7 CIT 138, 140, 582 F.Supp. 887, 889 (1984).

These criteria are codified at 19 U.S.C. § 1677j(d)(1) for determinations concerning whether later developed merchandise is within the scope of an antidumping duty *order*.

clarified Commerce's conviction that "[r]od ends and rod end bearings, which some parties have referred to as aircraft components, *are* subject to these investigations." AR (Pub.) Doc. 72 at 3 (emphasis in original). Minebea continues to claim that rod ends are not a type of spherical plain bearing because of their physical and functional distinctions, and hence they should have been excluded from the investigations.[2]

The ITA's decision to investigate imports of rod ends and rod end bearings was based on the fact that the petition specifically included spherical plain bearings and housed bearing units. AR (Pub.) Doc. 1 at 13–15. The petition also explicitly cited bearings used in aviation and aerospace applications. *Id.* at 4. Furthermore, Exhibit 4 to the petition classified aircraft control and rod end bearings as among the products manufactured by Torrington which were to be investigated. Lastly, Exhibit 34 also described rod ends and rod end bearings as mounted bearing units of the type which fall within the ambit of the petition.

The petition clearly included spherical plain bearings and housed bearing units in its listing of products to be investigated. Moreover, rod ends and rod end bearings are used in aerospace applications, an area of interest expressly mentioned in the petition. Finally, petitioner's submissions after initiation of the investigations, which were made in response to ITA requests to clarify the scope of the petition, unequivocally indicate that the petitioner intended for rod ends and rod end bearings to be included as well. *See* AR (Pub.) Docs. 49, 451, 480.

The ITA's discretion concerning scope clarification at the investigatory stages is extensive. *See Mitsubishi*, 12 CIT at 1046–47, 700 F.Supp. at 555–56. In the case at bar, the ITA was well within its discretion when it found that rod ends and rod end bearings were included in the scope of the investigations. The record contains evidence in the petition and in Torrington's additional submissions which supports their inclusion. The Court finds, therefore, that the determination of the ITA to include rod ends and rod end bearings in these investigations is supported by substantial evidence and is otherwise in accordance with law.

*Conclusion*

The determination by the ITA that petitioner had standing to file an antidumping petition on behalf of the domestic industry which manufactures spherical plain bearings is in accordance with law and is affirmed. The decision to include rod ends and rod end bearings within the scope of the investigations also was in accordance with law and is affirmed.

2. Minebea's argument that rod ends should be excluded because their coefficient of friction is higher than that of other antifriction bearings is ill-founded. The investigations were never limited on that basis, and the Court sees no reason to impose such a limitation now. Rod ends and rod end bearings may not deter friction as efficiently as other bearings, but their function is nonetheless related to the reduction of friction.