**MINEBEA CO., LTD. and NMB Corporation, Plaintiffs,**

v.

**UNITED STATES, Defendant,**

**The Torrington Company, Defendant–Intervenor.**

**Court No. 89–06–00344S.**

United States Court of International Trade.

July 6, 1992.

Tanaka Ritger & Middleton, H. William Tanaka, Michele N. Tanaka and Michael J. Brown, Washington, D.C., for plaintiffs.

James A. Toupin, Asst. Gen. Counsel, Stephen A. McLaughlin and Francis Marshall, Atty.–Advisors, U.S. Intern. Trade Com'n, Washington, D.C., for defendant.

Stewart & Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr. and David Scott Nance, Washington, D.C., for defendant-intervenor.

## OPINION

TSOUCALAS, Judge:

Plaintiffs, Minebea Co., Ltd. and NMB Corporation ("Minebea"), move pursuant to Rule 56.1 of the rules of this Court for judgment on the agency record in regard to the United States International Trade Commission's ("ITC") final determination that the U.S. spherical plain bearings industry has been injured by less than fair value ("LTFV") imports of bearings from Japan. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From The Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom,* 54 Fed.Reg. 21,488 (1989); *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From The Federal Republic of Germany, France, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom* ("ITC Final Determination"), Inv. Nos. 303–TA–19–20 (Final), Inv. Nos. 731–TA–391–399 (Final), USITC Pub. 2185 (May 1989).

Minebea alleges that defendant-intervenor The Torrington Company ("Torrington"), petitioner in the underlying antidumping duty proceeding, did not have the support of the major portion of the U.S.

spherical plain bearings industry. Therefore, Minebea alleges that Torrington had no standing to file an antidumping duty petition "on behalf of an industry" as required by 19 U.S.C. § 1673a(b) (1988) which states in pertinent part:

**(b) Initiation by petition**

**(1) Petition requirements**

An antidumping proceeding shall be commenced whenever an interested party ... files a petition with the administering authority, on behalf of an industry, which alleges the elements necessary for the imposition of the duty imposed by section 1673 of this title, ...

**(2) Simultaneous filing with Commission**

The petitioner shall file a copy of the petition with the Commission on the same day as it is filed with the administering authority.

Minebea argues that the ITC has authority to terminate an antidumping duty investigation on the ground that the petitioner has no standing to file a petition and that its failure to do so is reversible error. *Memorandum on behalf of the Minebea Companies in support of motion for judgment upon the agency record* ("Minebea Memorandum") at 14–30. Alternatively, Minebea argues that the ITC's determination that the U.S. spherical plain bearings industry was injured by reason of LTFV imports from Japan was not in accordance with law because a majority of the U.S. spherical plain bearings industry opposed the investigation and attributed any injury suffered by themselves to factors other than imports from Japan. *Minebea Memorandum* at 30–31.

The Court's jurisdiction is based on 28 U.S.C. § 1581(c) (1988).

## Background

On March 31, 1988, Torrington filed an antidumping duty petition with the Department of Commerce, International Trade Administration ("ITA"), and with the ITC alleging that it was an interested party [1] and that the petition was filed on behalf of the U.S. domestic antifriction bearings industry.[2] Administrative Record ("AR") Pub.Doc. 1. Torrington alleged in its petition that there was one antifriction bearings industry and one class or kind of merchandise covered by its petition. *Id.* On July 13, 1988, the ITA determined that antifriction bearings comprise five classes or kinds of merchandise, one of which was spherical plain bearings.[3]

Domestic producers of the five classes or kinds of antifriction bearings emerged to either support or oppose the petition. In regard to spherical plain bearings, New Hampshire Ball Bearings, Inc. ("NHBB"), a subsidiary of Minebea, was found to be the only U.S. producer other than Torrington and opposed Torrington's petition. AR Pub.Doc. 656.

In its final determination, the ITA found that opponents of the petition did not represent a majority of any of the domestic industries, that Torrington had filed a facially sufficient petition, and that therefore Torrington had standing to file an antidumping duty petition with respect to each of the five classes or kinds of antifriction

---

**1.** The term interested party is defined at 19 U.S.C. § 1677(9) (1988) which states in pertinent part:

**(9) Interested Party**
The term "interested party" means—

. . . . .

(C) a manufacturer, producer, or wholesaler in the United States of a like product,
. . . .

The term like product is defined at 19 U.S.C. § 1677(10) (1988):

**(10) Like Product**
The term "like product" means a product which is like, or in the absence of like, most similar in characteristics and uses with, the

article subject to an investigation under this subtitle.

**2.** Industry is defined at 19 U.S.C. § 1677(4) (1988):

**(4) Industry**
**(A) In General**
The term "industry" means the domestic producers as a whole of a like product....

**3.** The ITA's determination that antifriction bearings comprise five classes or kinds of merchandise was affirmed by this Court in *The Torrington Co. v. United States,* 14 CIT ——, 745 F.Supp. 718 (1990), *aff'd,* 938 F.2d 1276 (Fed.Cir.1991).

bearings, including spherical plain bearings. *Final Determinations of Sales at Less than Fair Value: Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany,* 54 Fed.Reg. 18,992, 19,006 (1989). This Court explicitly affirmed the ITA's standing determination in regard to the U.S. spherical plain bearings industry in *Minebea Co. v. United States,* 16 CIT ——, ——, 782 F.Supp. 117, 119–20 (1992).

Although requested to do so, the ITC refused to terminate its investigation due to a lack of standing by Torrington to file a petition in regard to spherical plain bearings. Vice Chairman Ronald A. Cass was the only Commissioner to address the standing issue stating that "[i]n the interests of comity, I have concluded that it may be inappropriate for the Commission to pass on standing issues in investigations where Commerce has already considered and resolved the question." ITC Final Determination at 123.

Upon considering the administrative record before it, the ITC determined that LTFV imports of spherical plain bearings from Japan were causing material injury to the U.S. industry. ITC Final Determination at 4.

### Discussion

■ A determination by the ITC will be affirmed unless that determination is not supported by substantial evidence or is otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B) (1988). Substantial evidence is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938); *Alhambra Foundry Co. v. United States,* 12 CIT 343, 345, 685 F.Supp. 1252, 1255 (1988) (citations omitted).

### 1. *Standing*

This Court has affirmed Torrington's standing to file an antidumping duty petition in regard to antifriction bearings on numerous occasions. *NTN Bearing Corp.*

*of America v. United States,* 15 CIT ——, ——, 757 F.Supp. 1425, 1427–31 (1991); *SKF USA, Inc. v. United States Dep't of Commerce,* 15 CIT ——, ——, 762 F.Supp. 344, 346–48 (1991); *Koyo Seiko Co. v. United States,* 15 CIT ——, ——, 768 F.Supp. 832, 836–37 (1991). In addition, this Court has *explicitly affirmed* Torrington's standing to file an antidumping duty petition on behalf of the U.S. spherical plain bearings industry. *Minebea Co. v. United States,* 16 CIT ——, ——, 782 F.Supp. 117, 119–20 (1992).

This Court stated in *NTN* that "[i]t is the function of the *ITA* to determine standing and no statute or regulation requires the ITA to defer to data used by the ITC." *NTN,* 15 CIT at ——, 757 F.Supp. at 1430 (emphasis in original); *see also Minebea,* 16 CIT at ——, 782 F.Supp. at 120.

The ITC itself has taken the position that it does not have statutory authority to determine a petitioner's standing. *Grey Portland Cement And Cement Clinker From Japan,* Inv. No. 731–TA–461 (Final), USITC Pub. 2376 at 3–13, 45–46 (April 1991); *Silicon Metal From The People's Republic Of China,* Inv. No. 731–TA–472 (Final), USITC Pub. 2385 at 5 n. 1 (June 1991).

Recently the United States Court of Appeals for the Federal Circuit addressed the issue of the standing of a petitioner in an antidumping duty investigation to file on behalf of an industry. *Suramerica de Aleaciones Laminadas, C.A. v. United States,* 966 F.2d 660 (Fed.Cir.1992). In its opinion the Court lends support for the proposition that questions of the standing of a petitioner to file an antidumping duty petition are to be decided by the ITA alone stating that:

Although both Commerce and the ITC are "charged" with administering different parts of the Act, it is Commerce who determines that a petition is sufficient to cause the initiation of investigations— that the statutory requirements are satisfied. *The ITC's position in its brief is that it defers to Commerce's initial determination, and that only Commerce can review that determination. This is*

*a reasonable and permissible interpretation of the Act's delineation of respective responsibilities.*

*Id.* at 665 n. 6 (emphasis added).

 Therefore, this Court finds that it is the ITA's sole responsibility to determine the standing of a petitioner to file a petition requesting the imposition of antidumping duties "on behalf of an industry." The ITC correctly defers to the ITA's decision on this issue. The Court adheres to its opinion in *Minebea* and finds that Torrington had standing to file an antidumping duty petition on behalf of the U.S. spherical plain bearings industry. *Minebea,* 16 CIT at ——, 782 F.Supp. at 120.

## 2. *ITC's Injury Determination*

Minebea argues that NHBB accounted for more than half of the U.S. spherical plain bearings industry during the period of investigation and that NHBB took the position that any injury or difficulty it was experiencing was not a result of LTFV imports. Therefore, Minebea argues that the ITC's finding that LTFV imports have caused injury to the U.S. spherical plain bearings industry was not in accordance with law. *Minebea* 16 CIT at —— – ——, 782 F.Supp. at 119. Minebea does not challenge the ITC's determination on the basis that it is not supported by substantial evidence.

 Minebea cites no statute or cases which support its position that there can be no finding of material injury if a majority of the U.S. industry believes that its problems are not caused by LTFV imports. In fact, when the ITC is determining whether LTFV imports are a cause of material injury suffered by a U.S. industry, the position of any segment of the U.S. industry as to the cause of its difficulties is not something which the ITC is required to consider. 19 U.S.C. § 1677(7) (1988). The ITC is required to evaluate the condition of the industry as a whole when determining whether LTFV imports are a cause of material injury to the U.S. industry. *Calabrain Corp. v. United States Int'l Trade Comm'n,* 16 CIT ——, ——, 794 F.Supp. 377, 385 (1992) (quoting *Copperweld Corp. v. United States,* 12 CIT 148, 165–66, 682 F.Supp. 552, 569 (1988)); *Metallverken Nederland B.V. v. United States,* 13 CIT 1013, 1020, 728 F.Supp. 730, 736 (1989); *Sandvik AB v. United States,* 13 CIT 738, 745–46, 721 F.Supp. 1322, 1330 (1989), *aff'd,* 904 F.2d 46 (Fed.Cir.1990). That is precisely what it did here. ITC Final Determination at 57–58, 71–72.

### *Conclusion*

This Court finds that it is the responsibility of the ITA to determine the standing of a petitioner to file a petition "on behalf of an industry" requesting the imposition of antidumping duties. The ITC's decision to defer to the ITA's decision on this issue was in accordance with law and is affirmed. The Court also finds that the ITC's determination that the U.S. spherical plain bearings industry was materially injured by LTFV imports from Japan was in accordance with law and is affirmed. Therefore, this case is dismissed.