ENCON INDUSTRIES, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 92–01–00026

(Dated September 24, 1992)

*Brownstein, Zeidman and Lore* (*Ronald M. Wisla* and *Steven P. Kersner*) for plaintiff.
*Lyn M. Schlitt,* General Counsel, United States International Trade Commission, *James A. Toupin,* Assistant General Counsel (*Judith M. Czako*), for defendant.

## OPINION

RESTANI, *Judge:* Plaintiff, an importer of ceiling fans, challenges the affirmative injury determination of the International Trade Commission ("ITC") in *Certain Electric Fans from the People's Republic of China,* USITC Pub. 2461, Inv. No. 731–TA–473 (Final) (Dec. 1991); 56 Fed. Reg. 64,642 (1991). ITC's determination is sustained.

### BACKGROUND AND ARGUMENTS

The ceiling fan market in the United States can be roughly segmented into low-end and high-end markets.[1] Ceiling fans imported from China compete largely in the low-end market. There is one domestic ceiling fan producer, Lasko Metal Products, Inc., that operates in the low-end market and it does not represent a "major proportion" of the United States production of ceiling fans by either volume or value.[2] Because ITC found all domestic ceiling fans to be "like" the imported ceiling fans, *see* 19 U.S.C. § 1677(10) (1988) (definition of "like product"), it assessed injury based on the domestic industry composed of all ceiling fan manufacturers, both high-end and low-end.

Plaintiff does not challenge ITC's like product determination. Furthermore, plaintiff does not challenge ITC's decision to assess the condition of the industry as a whole for purposes of deciding whether the industry was materially injured. Nor does it object to the finding that the industry as a whole was in a materially injured state. Plaintiff does object to ITC's failure to segregate the industry into two market segments for the purpose of analyzing the causal connection between the class of imports that are found to be traded at less than fair value ("LTFV")[3] and the material injury to the domestic industry. Specifically, plaintiff argues, ITC should determine whether low-end imports injured a "major proportion" of the total domestic industry by examining the effects on individual producers. Because over two-thirds of the domestic industry manufactures high-end ceiling fans, plaintiff alleges

---

[1] There is also a more limited medium tier in the domestic market.

[2] 19 U.S.C. § 1677(4) defines industry, in relevant part, as:

> The domestic producers as a whole of a like product, or those producers whose collective output of the like product constitutes a major proportion of the total domestic production. * * *

19 U.S.C. § 1677(4) (1988). ITC does not argue that the single producer, Lasko, manufactured a "major proportion" of the domestic ceiling fan production. Lasko produces less than one-third by volume, and even less by value, of the domestic production.

[3] This determination is made by the International Trade Administration of the Department of Commerce.

that the causal connection between the LTFV imports and material injury of the whole industry is missing. Plaintiff also argues that, however one views the domestic industry, any injury to it was not caused by the LTFV imports.

DISCUSSION

I. *Injury to a U.S. industry as a whole:*

19 U.S.C. § 1673 reads in part:

### § 1673.   Imposition of antidumping duties.

If—

(1) the administering authority determines that a class or kind of foreign merchandise is being, or is likely to be, sold in the United States at less than its fair value, and
(2) the Commission determines that—
(A) an industry in the United States—
(i) is materially injured, or
(ii) is threatened with material injury, or
(B) the establishment of an industry in the United States is materially retarded,
by reason of imports of that merchandise or by reason of sales (or the likelihood of sales) of that merchandise for importation,
then there shall be imposed upon such merchandise an antidumping duty, in addition to any other duty imposed, in an amount equal to the amount by which the foreign market value exceeds the United States price for the merchandise.

19 U.S.C. § 1673 (1988). Viewing plaintiff's arguments *in toto,* plaintiff seems to contend that LTFV imports must be a substantial cause of injury to a majority of the producers in the domestic industry. Unfortunately for plaintiff, this reading is not supported by the legislative history, agency interpretation or case law.

It is well established that ITC may employ a two-step analysis. It may first determine whether the industry that produces products "like" the class of products found to be sold at LTFV is materially injured; it may then determine whether imports in the class are a part of the cause of that injury. *Iwatsu Elec. Co. v. United States,* 15 CIT 44, 48, 758 F. Supp. 1506, 1509–1510 (1991) (ITC examines the effects of imports in a class of merchandise sold at LTFV on the domestic industry producing the "like product"; also recognizing ITC's two-step approach). Furthermore, ITC may not weigh the various causes of injury. "Any such requirement has the undesirable result of making relief more difficult to obtain for industries facing difficulties from a variety of sources; industries that are often the most vulnerable to less-than-fair-value imports." S. Rep. No. 249, 96th Cong., 1st Sess. 74–75 (1979). A cause which even minimally contributes to material injury is sufficient. *LMI-La Metalli Industriale, S.p.A. v. United States,* 13 CIT 305, 321, 712 F. Supp. 959, 971 (1989), *aff'd in part and rev'd in part on other grounds,* 912 F.2d 455 (Fed. Cir.

1990); *see also Citrosuco Paulista, S.A. v. United States,* 12 CIT 1196, 1228, 704 F. Supp. 1075, 1101 (1988).

Plaintiff's approach would add a new requirement to ITC's causal nexus test and completely recast it. That is, ITC would be required to determine if a majority of U.S. producers are materially injured by reason of the LTFV imports, not whether the material injury to the industry as a whole is caused in some part by the imports in a class found to be sold at LTFV. The court in *Minebea Co. v. United States,* 16 CIT 550, Slip Op. 92–101 (July 6, 1992) (to be reported at 794 F. Supp. 1161 (1992)), has specifically held that injury to a majority of producers is not a requirement and that ITC may analyze the effect on the industry as a "whole." *Id.* at 554, Slip Op. 92–101 at 9. Analysis by producers or on a market segment basis is not required. The flaw in plaintiff's argument becomes more apparent if one looks at plaintiff's choices.

Had plaintiff challenged the "like product" determination, and obtained a bifurcation of the ceiling fan industry, in all likelihood the producer or producers at the lower end would still be found to be injured. *See infra,* part II. With the low end of the market as the focus for the inquiry as to material injury, the nexus to LTFV imports would be clearer. What plaintiff is arguing is that the high-end and low-end products are so different that imports which compete directly with low-end fans cannot possibly affect high-end fan producers. First, ITC did not make this finding. Second, this is a back-door way of saying that the "like product" determination, which benefits plaintiff, is wrong. The statute, as interpreted by ITC and the *Minebea* court, protects the process from the type of maneuvering attempted by plaintiff.

## II. *Substantial evidence of a causal connection:*

Apart from ITC's lack of a market segregation approach, plaintiff argues lack of substantial evidence for various findings underpinning the nexus determination. Plaintiff argues ITC ignored overall pricing trends. The court cannot find support for that argument. ITC found pricing trends mixed. That finding is supported by the record. Prices fluctuated throughout the period of investigation. While prices were higher at the end of the period than at the beginning, that may simply have been caused by the artificial nature of the investigatory period. If prices are fluctuating, they may soon decline. Furthermore, contrary to plaintiff's contention, Lasko's price increases are not determinative as ITC was not required to analyze Lasko separately. Increases are not incompatible with price suppression. Given the mixed pricing data, ITC turned to underselling. ITC found overall underselling.

With regard to underselling, plaintiff applies a margin analysis, finds that the margins of underselling exceeded LTFV margins and concludes there is no causal nexus to LTFV imports. Plaintiff acknowledges that the statute does not require margins analysis, citing *Alberta Pork Producers' Mktg. Bd. v. United States,* 11 CIT 563, 588–90, 669 F. Supp. 445, 465–66 (1987); *Hyundai Pipe Co. v. U.S. International Trade Com-*

*mission,* 11 CIT 117, 120, 670 F. Supp. 357, 360 (1987), but urges its application here.

Margin analysis is not without pitfalls. Dependence on specific margins may lead to endless remands to consider LTFV margin adjustments found by the Commerce Department. Furthermore, margin analysis may deflect ITC from the proper injury analysis. *Cf. Algoma Steel Corp. v. United States,* 12 CIT 518, 524, 688 F. Supp. 639, 645, *aff'd,* 7 Fed. Cir. 154, 865 F.2d 240 (Fed. Cir. 1988), *cert. denied* 492 U.S. 919 (1989) (ITC is to examine effects of imports in the class found to be sold at LTFV, not effects of specific sales at LTFV.) Thus, the court will not order ITC to undertake margins analysis.

Plaintiff also argues that Lasko's injuries are caused by fairly traded imports. As indicated, ITC is not to weigh causes, and plaintiff does not point to evidence about fairly traded imports that would indicate they are the sole cause of injury. To the contrary, fairly traded imports from Taiwan and Hong Kong declined during the period of investigation.

The facts cited by plaintiff do not detract from the overall evidence of injury by reason of imports in a class found to be sold at LTFV, which is substantial. ITC's determination is sustained.