**KERN–LIEBERS USA, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant,**

and

**AK Steel Corporation, Bethlehem Steel Corporation, Gulf States Steel Inc. of Alabama, Inland Steel Industries, Inc., LTV Steel Co., Inc., National Steel Corporation, Sharon Steel Corporation, U.S. Steel Group A Unit of USX Corporation, and WCI Steel, Inc., Intervenor–Defendants.**

Slip Op. 95–50.
Court No. 93–09–00551–AD.

United States Court of
International Trade.

March 23, 1995.

Porter, Wright, Morris & Arthur, Washington, DC (Leslie Alan Glick), for plaintiff.

Frank W. Hunger, Asst. Atty. Gen., David M. Cohen, Director, and Velta A. Melnbrencis, Asst. Director, Commercial Litigation Branch, Civil Div., U.S. Dept. of Justice; and

Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce (Jeffrey C. Lowe), Washington, DC, of counsel, for defendant.

Skadden, Arps, Slate, Meagher & Flom, Washington, DC (Robert E. Lighthizer and John J. Mangan) and Dewey Ballantine, Washington, DC (Alan Wm. Wolff, Michael H. Stein, Bradford L. Ward and Guy C. Smith), for intervenor-defendants.

*Memorandum*

AQUILINO, Judge:

The plaintiff importer of merchandise described as "[c]ertain cold-rolled seat belt retractor spring steel with a specific chemical composition, restricted inclusion levels, and a particular microstructure and tensile strength"[1] complains of the refusal of the International Trade Administration, U.S. Department of Commerce ("ITA") to exclude such imported material from the scope of its final determination of sales of certain cold-rolled steel products from Germany at less than fair value, 58 Fed.Reg. 37,136 (July 9, 1993), *amended*, 58 Fed.Reg. 44,170 (Aug. 19, 1993).

I

The record of the proceedings before the ITA indicates that an identical product is not manufactured domestically, nor did the underlying petition of the domestic industry focus on the imported product *per se*. Whereupon the respondent importer requested exclusion from the ensuing investigation and affirmative determination based on the following grounds, among others:

Seat belt retractor steel springs are a unique product because the steel produced must meet the rigid standards of the National Highway Transportation Safety Administration. Federal Motor Vehicle Safety Specification 209 outlines specifications for seat belt retractor springs to ensure motor vehicle safety. Kern–Liebers is the primary source of these products in the United States, and no domestic steel producer can uniformly meet the specifica-

tions imposed by the U.S. Government or supply the quantities needed by Kern–Liebers. . . .

. . . The U.S. produced hot band steel product does not meet the specifications for maximum inclusion levels, the standard for durability of seat belt retractor springs, and cannot be used in cold rolling the product.

\*    \*    \*    \*    \*    \*

Seat belt retractor steel used for producing seat belt retractor springs is a different "class or kind" of merchandise than the products produced by petitioners. The specifications for Kern–Lieber's [*sic*] product are distinct from that manufactured by petitioners. The expectations of Kern–Lieber's [*sic*] customers for these products are extremely high. Whereas the steel described in the petition is distributed to wholesalers and distributors, seat belt retractor steel is imported or purchased directly from the producer and converted to springs through a manufacturing process by Kern–Liebers and sold directly to the end-users. Finally, the highly specialized use of the steel manufactured by Kern–Liebers differs from the use of the steel that is manufactured by petitioners.[2]

In denying exclusion, the ITA stated its position generally as to all the claims regarding scope, including that now at bar, to wit:

. . . [A]ll of the products listed . . . are flat-rolled and clearly fall within the chemical (*i.e.*, carbon steel) . . . characteristics indicated in the scope description. Furthermore, unless specifically excluded, all . . . cold-rolled . . . products meeting those criteria are included within the scope regardless of any other technical properties which the steel may possess. While all of these products possess some physical characteristics which make them different from other steel products, none of those differences rise to the level of class or kind distinctions and only reflect relatively minor variations within the overall . . . cold-rolled . . . classes or kinds. Were the

---

1. 58 Fed.Reg. at 37,076.

2. Appendix to Pre–Hearing Brief of Kern–Liebers USA, Inc., pp. A–8, A–9 to A–10.

Department to subdivide the scope to reflect every particular type of carbon steel flat product produced, we would have been faced with creating an absurdly large or even infinite number of classes or kinds....

Regarding the other *Diversified Products* criteria, the ultimate uses and purchaser expectations of the products listed ... are similar to those of other products within their respective classes or kinds.... The cold-rolled products in the list ... will be used in applications in which surface characteristics and narrower tolerances are important, and consumers will expect the product to possess the qualities of a steel product which has been flat-rolled at ambient temperatures.... Carbon steel flat products in the three classes or kinds are generally sold both directly to end users as well as to service centers; that the products ... may be more likely to be sold directly to end users does not differentiate them from other products in those classes or kinds. Lastly, products in the ... cold-rolled ... classes or kinds are all advertised in the same manner, that is, in producer catalogs and other promotional literature. Certain products ... may be developed by the manufacturer in cooperation with one or more end users and might not necessarily be included in such advertising. However, this possible difference in the method of advertising does not support the assertion that the products listed ... constitute separate classes or kinds.

Regarding like product issues, in the absence of persuasive evidence that the like products and domestic industries identified by the ITC are inappropriate to follow for purposes of standing, it is the Department's usual practice to defer to the like product descriptions developed by the ITC.... In these investigations, the like product descriptions written by the ITC in its preliminary injury determinations are equivalent to the Department's scope definitions. Thus, we believe that the products listed ... do not constitute separate like products, and that petitioners do have standing regarding these particular products.... [P]etitioners are not required to manufacture every product within the like

product designation ... and the statute does not require the Department to consider the domestic availability of a particular product within the scope when considering a scope exclusion request....

58 Fed.Reg. at 37,076.

In its complaint filed herein, the plaintiff avers, *inter alia*, that the ITA "failed in its statutory duty to investigate and analyze each scope exclusion request individually and make specific findings of fact" [para. 4] and that the agency should not have relied on the like-product analysis of the International Trade Commission ("ITC"). The complaint also states that the ITA did conclude that hot-rolled seat-belt retractor steel was not within the scope of its determination and that, since the same special characteristics which distinguish that product apply to the cold-rolled counterpart, the determination on its face is an inconsistent application of the facts and the law. The plaintiff prays that the court either reverse the agency's determination or, at a minimum, remand to the ITA for specific findings in accordance with the factors approved by the Court of International Trade in *Diversified Products Corp. v. United States*, 6 CIT 155, 572 F.Supp. 883 (1983), and subsequent cases. This relief is sought via a motion for judgment on the agency record per CIT Rule 56.2.

The defendant opposes the motion on grounds that the ITA has broad discretion to define the scope of its investigations; that the scope defined herein, namely, cold-rolled carbon steel flat products, covers plaintiff's retractor steel in accordance with the petition's description of merchandise and the ITC's determination(s); and that analysis à la *Diversified Products* confirms inclusion. The intervenor-defendants add in further opposition that they are not required to produce every variation of a product within a given class or kind.

Jurisdiction of the court is based on 28 U.S.C. § 1581–(c), with the standard of judicial review of the issues raised whether the challenged ITA determination is unsupported by substantial evidence on the record, or otherwise not in accordance with law. 19 U.S.C. § 1516a(b)(1)(B).

## II

■ There should be little doubt by now that the scope of an investigation and subsequent determination pursuant to the Trade Agreements Act of 1979, as amended, lies largely in the ITA's discretion. *E.g., Mitsubishi Electric Corp. v. United States,* 898 F.2d 1577, 1583 (Fed.Cir.1990). And the agency generally exercises this "broad discretion to define and clarify the scope of an antidumping investigation in a manner which reflects the intent of the petition." *Minebea Co. v. United States,* 16 CIT 20, 22, 782 F.Supp. 117, 120 (1992), *aff'd on other grounds,* 984 F.2d 1178 (Fed.Cir.1993).

■ The record at hand shows ITA adoption of the description contained in the petition without modification, to wit, "cold-rolled carbon steel flat products", treating them as one class or kind of merchandise. On its part, the plaintiff admits that its merchandise enters under HTS subheading 7211.30.10 ("Flat-rolled products of iron or nonalloy steel, of a width of less than 600 mm, not clad, plated or coated: ... Not further worked than cold-rolled (cold-reduced), of high-strength steel: Of a width of less than 300 mm: Of a thickness exceeding 0.25 mm"). In short, there is no dispute that plaintiff's product[3] satisfies the petition's definition.

■ As indicated, what the plaintiff does dispute is the agency's failure to analyze separately the request for exclusion from the resultant proceedings. The complaint refers to a "statutory duty" to do so, but this court is unable to discern such an individuated requirement in the governing statute and regulations. This does not mean, however, that a determination reached as to a class or kind of merchandise as a whole need not apply to each good deemed a part thereof. To the extent questions are raised as to a particular item, the ITA (and the courts) have considered the following criteria: the general physical characteristics of the merchandise, the expectations of the ultimate purchasers, the channels of trade in which the merchandise moves, the ultimate use of the merchandise, and cost. *E.g., Diversified Products Corp. v. United States,* 6 CIT 155, 162, 572 F.Supp. 883, 889 (1983); 19 C.F.R. § 353.29 (1993). Such assessment generally has been of newly-developed goods, that is, merchandise which is created after entry of an antidumping or countervailing duty order by the ITA, as well as of instances of alleged attempted circumvention. *See* 19 U.S.C. § 1677j(d) (1988). Here, plaintiff's product is not newly-developed; it existed before the petition. On the other hand, if the foregoing factors are nevertheless dispositive of plaintiff's complaint, the record supports the agency finding of similarity of general physical characteristics among the cold-rolled products covered. Furthermore, the court is not persuaded after review of the record that the conclusions quoted above for the entire class "[r]egarding the other *Diversified Products* criteria"[4] would change were plaintiff's product, standing alone, to be reconsidered by the ITA.

Also quoted above from the agency's determination is the representation that, in antidumping proceedings, "the like product descriptions written by the ITC in its preliminary injury determinations are equivalent to the Department's scope definitions."[5] The plaintiff challenges this reasoning, just as it challenged separately the Commission's determination of material injury to the domestic industry by reason of its imports. That challenge has now been dismissed. *Kern–Liebers USA, Inc. v. United States,* 19 CIT ——, Slip Op. 95–9, 1995 WL 33066 (Jan. 27, 1995), *notice of appeal filed* Feb. 24, 1995. The court affirmed the ITC's finding that plaintiff's seat-belt retractor steel is not a product separate from other types of cold-rolled steel products subject to the investigation:

The court finds the distinctions drawn by Kern–Liebers constitute "minor differences" and do not merit a separate like product determination.

19 CIT at ——, Slip Op. 95–9, at 11, quoting *Cambridge Lee Indus., Inc. v. United States,*

---

3. For its chemical composition and other required specifications, see *id.* at A2.

4. 58 Fed.Reg. at 37,076.

5. *Id.*

13 CIT 1052, 1055, 728 F.Supp. 748, 750–51 (1989).

■ With regard to the dropping of hot-rolled seat-belt retractor spring steel from the ITA investigation, that resulted from a request by the petitioning domestic industry to amend the petition(s) to exclude that product. And the intent of a petitioner and the face of its petition can be conclusive of the scope of the ensuing administrative proceedings. *Cf. Minebea Co. v. United States, supra.* Moreover, plaintiff's counsel admitted during oral argument herein that the hot-rolled product is not competitive with the one at bar. *See* Tr. at 6–7.

### III

■ In view of the foregoing, the court is unable to conclude that the determination of the ITA was not in accordance with law. Also, given the record presented and the rule that the possibility of drawing two inconsistent conclusions from its contents does not prevent the ITA's ruling from being supported by substantial evidence [6], plaintiff's motion for judgment on that record must be denied and this action dismissed.

### JUDGMENT

This action having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now, therefore, in conformity with said decision, it is hereby

ORDERED, ADJUDGED and DECREED that this action be, and it hereby is, dismissed.

---

**6.** *See Consolo v. Federal Maritime Comm'n,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966); *Torrington Co. v. United States,* 14 CIT 507, 513–14, 745 F.Supp. 718, 723 (1990), *aff'd,* 938 F.2d 1276 (Fed.Cir.1991).